**In re MARKIM, INC., Debtor.**

**Bankruptcy No. 81–02041G.**

United States Bankruptcy Court,
E. D. Pennsylvania.

Oct. 14, 1981.

Nathan Lavine, Philadelphia, Pa., for debtor, Markim, Inc.

Jack B. Justice, Drinker, Biddle & Reath, Philadelphia, Pa., for Cooper Industries, Inc.

Michael J. Glasheen, Edward J. DiDonato, Clark, Ladner, Fortenbaugh & Young, Philadelphia, Pa., for JLG Industries, Inc.

## OPINION

EMIL F. GOLDHABER, Bankruptcy Judge:

The issue presented is whether we should grant the debtor's application for an order authorizing the use of cash collateral pursu-

---

1. This opinion constitutes the findings of fact and conclusions of law required by Rule 752 of

ant to § 363(c)(2)(B) of the Bankruptcy Code ("the Code"). Since we conclude that the debtor's application proposes a method by which the creditors who have a security interest in the cash collateral will be adequately protected under the debtor's proposal, we will authorize the debtor to use the cash collateral with certain restrictions set forth in the appended order.

The facts of the instant case are as follows:[1] Markim, Inc. ("the debtor") is in the business of leasing and selling construction equipment. The majority of its rental fleet is secured by liens to certain of its creditors. In the fall of 1980, the debtor called a meeting of those creditors to discuss its financial difficulties. As a result of that meeting, the debtor agreed to pay pro rata to its secured creditors a total of $450,000 per month on account of their liens. The debtor also gave its secured creditors what amounted to a blanket lien; that is, each secured creditor got a lien on the debtor's accounts receivable, on any equity the debtor had in its secured equipment, on its miscellaneous tools and equipment and a junior mortgage on the debtor's real estate.

The debtor made the payments required by the above agreement until May of 1981 when it filed a petition for a reorganization under chapter 11 of the Code. Shortly thereafter, the debtor filed an application for an order authorizing the use of cash collateral. Two creditors, one secured (Cooper Industries, Inc.) and one unsecured (JLG Industries, Inc.), filed written objections to the debtor's application. At the hearing held on that application, the majority of the secured creditors had no objection to the use of cash collateral by the debtor with certain restrictions. However, some of the secured creditors voiced objections and Cooper Industries, Inc., pressed its written objection by presenting evidence in opposition.

Section 363(c)(2) of the Code governs the use of cash collateral by a trustee or debtor in possession and provides, in part:

---

the Rule of Bankruptcy Procedure.

(c)(1) If the business of the debtor is authorized to be operated under section 721, 1108, or 1304 of this title and unless the court orders otherwise, the [debtor in possession] may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing.

(2) The [debtor in possession] may not use, sell, or lease cash collateral under paragraph (1) of this subsection unless—

(A) each entity that has an interest in such cash collateral consents; or

(B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section.

Section 363(e) further provides:

(e) Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court shall prohibit or condition such use, sale, or proposed to be used, sold, or leased, by the trustee, the court shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest. In any hearing under this section, the trustee has the burden of proof on the issue of adequate protection.

With respect to the issue of adequate protection, section 361 provides:

When adequate protection is required under section 362, 363, or 364 of this title of an interest of an entity in property, such adequate protection may be provided by—

(1) requiring the trustee to make periodic cash payments to such entity, to the extent that the stay under section 362 of this title, use, sale, or lease under section 363 of this title, or any grant of a lien under section 364 of this title results in a decrease in the value of such entity's interest in such property;

(2) providing to such entity an additional or replacement lien to the extent that such stay, use, sale, lease, or grant results in a decrease in the value of such entity's interest in such property; or

(3) granting such other relief, other than entitling such entity to compensation allowable under section 503(b)(1) of this title as an administrative expense, as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property.

At the hearing held in the instant case, the debtor offered evidence that it intends to provide the secured creditors with adequate protection of their interests in several ways. Firstly, the debtor offered to make monthly payments to the secured creditors of 80% of its cash flow (or $182,000 whichever is more). Those payments are to be divided among the secured creditors based on what percentage of the cash flow was generated by the equipment in which each creditor has a security interest. In support of that proposal, the president of the debtor, Marvin Rothstein ("Rothstein"), testified that the debtor had $292,903 available on July 2, 1981, for distribution to the secured creditors for the month of June.

Secondly, Rothstein testified that the secured creditors were adequately protected by the equity which the debtor had in its rental equipment. According to Rothstein's testimony, the value of the debtor's equipment is over $30 million while the debt secured by it is $23.6 million (exclusive of interest).

Thirdly, the debtor proposed to increase its equity in its equipment by selling or returning to the secured creditors 35–40% of its rental fleet.[2] By so doing, Rothstein testified that the debtor would reduce its

---

**2.** As a result of the objections of certain creditors to those sales being without notice, we ordered that the debtor provide notice to all creditors of any such sale for less than 90% of the debtor's appraised value of that equipment. We so ordered because we found that the sale of 35–40% of the debtor's equipment is not in the ordinary course of business within § 363(b) and because we found that all secured creditors had an interest in the equipment by virtue of their liens on all of the debtor's property.

secured debt and correspondingly high interest payments while retaining those pieces of equipment which have high equity, command high rentals or otherwise are necessary to the debtor's effective reorganization.

Fourthly, the debtor asserted that the secured creditors were adequately protected by the additional liens provided to them in the fall of 1980 by the debtor in most of its other property. However, Rothstein was unable to testify as to how much equity the debtor had in that property that is available to the secured creditors herein.

And finally, Rothstein testified that the secured creditors were being adequately protected by the debtor's improvements in the efficiency of its operation. Rothstein testified that the debtor had already made substantial cuts in its operating expenses while still providing the excellent maintenance and repair service for the rental equipment that it had in the past. Furthermore, he testified that, since the fall of 1980, all of the debtor's books had been open for inspection by any of its creditors so that they would be able to fully evaluate the steps which the debtor was taking towards reorganization of its business.

At the hearing, although several creditors voiced some objections, only Cooper Industries, Inc. ("Cooper") presented evidence in support of its objection. Cooper's evidence consisted of testimony that the total amount of the debt owed to it (including interest) is $977,048.40 while the value of the rental equipment which secured that debt is $713,250.00. Cooper offered further evidence that interest on its debt was accruing at a rate of over $13,000 per month while, under the debtor's proposal for monthly payments, it would receive only $3,967.68 for the month of June.

In rebuttal, the debtor offered evidence, through the testimony of Rothstein, which we accept as true, that the value of Cooper's equipment was $900,000 rather than the $700,000 which Cooper asserted. Rothstein further testified that, pursuant to the debtor's plan to reduce its fleet, he intended to retain only 10 (out of about 30) of the pieces of equipment in which Cooper has a security interest while selling or retaining the rest. This, Rothstein stated, would reduce the debt owed to Cooper to $491,000 while retaining the most valuable equipment (worth over $540,000) which also commanded a high rental ($26,554.67). Rothstein further testified that, although Cooper was to receive only $4,000 for June, that sum only represented 80% of the cash flow on its rentals for that month and did not represent the rental due for that month nor was it an accurate indication of what Cooper would receive in the future. Rather, Rothstein asserted that, in the future, Cooper should be receiving close to 80% of the $26,000 figure he calculated its equipment would be earning in rentals.

■ We conclude that, based on all of the evidence presented, the debtor has sustained its burden of establishing that Cooper's interests are being adequately protected. The evidence presented by Cooper only addressed the issue of the lack of equity in the 30 pieces of equipment in which it had a security interest. However, as testified to by Rothstein, Cooper is also secured by all of the rest of the debtor's property and, according to Rothstein, there is significant equity therein to protect Cooper and all of the rest of the secured creditors. We believe that testimony and, predicated upon it and in the absence of any evidence to the contrary, we find that there is equity in the debtor's property sufficient to adequately protect Cooper and the other secured creditors.

But even if we were to find that there was insufficient equity in the debtor's property, we would still conclude that the secured creditors were being adequately protected because we find that the provisions made by the debtor to provide the secured creditors with monthly payments together with its significant improvements in the efficiency of its operations clearly provide those creditors with adequate protection of their interests. On the basis of all of the above we will deny the objections of Cooper Industries, Inc., to the use of cash collateral by the debtor.

JLG Industries, Inc. ("JLG") also filed a written objection to the use of cash collateral by the debtor, although it failed to offer any evidence in support thereof at any of the hearings held herein. The bases of JLG's objection are (1) that there is no showing that the secured creditors are not adequately protected without the proposed monthly payment and (2) that any payment to the secured creditors pursuant to the fall of 1980 agreement would be a voidable preference over the unsecured creditors.

With respect to the first argument of JLG, we note that the burden is on the debtor to offer evidence of adequate protection to those with a security interest in the cash collateral. The debtor has met that burden *inter alia*, by providing for monthly payments to the secured creditors. We find this to be an adequate answer to JLG's first objection.

With respect to JLG's second argument, we find it to be likewise without merit. Firstly, the monthly payments at issue herein are not those required by the 1980 agreement but are, as stated above, part of the debtor's offer of adequate protection to the secured creditors in exchange for the debtor's right to use cash collateral. Secondly, even if the payments were pursuant to that agreement, JLG has not stated any basis on which it believes that that agreement is a voidable preference. Instead, we conclude that that agreement is not voidable, at least under § 547 of the Code for several reasons. First, the agreement was made well before 90 days prior to the filing of a petition for reorganization by the debtor. Second, there is no evidence that the debtor was insolvent at that time. Third, there is no evidence that the secured creditors will receive a preference because of the proposed payments. This is so because all of the secured creditors have a security interest in the cash collateral and, therefore, receiving part of that cash collateral does not give the secured creditors any more than they are otherwise entitled to. Furthermore, because the cash collateral is secured, there is no evidence that the unsecured creditors have any interest therein.

In fact, rather than being a dissipation of assets which would be available for distribution in a liquidation to the unsecured creditors, the proposed payments are only partial payments of what the secured creditors are entitled to under their loan agreements and security interests. We will, therefore, deny JLG's objection and grant the debtor's application to use cash collateral.