In re Max J. TRIPLETT, Debtor.

**Bankruptcy No. 87–52640–A.**

United States Bankruptcy Court,
W.D. Texas,
San Antonio Division.

June 17, 1988.

William R. Davis, Jr. of Law Offices of
Garvin Stryker, San Antonio, Tex., for
debtor.

J. Scott Sullivan of Kaufman, Becker,
Clare & Padgett, Inc., San Antonio, Tex.,
for NBC Bank–Colonnade, N.A.

## MEMORANDUM OPINION

R. GLEN AYERS, Jr., Chief Judge.

### I. INTRODUCTION

Before the Court are the Debtor's Application to Use Cash Collateral and NBC–Bank Colonnade's Motion to Restrict Use of Cash Collateral and for Adequate Protection. However, this opinion is not about "adequate protection" as that term is used in § 363 of the Bankruptcy Code. Rather, it is about § 1112(b), a most sadly displaced statutory provision. To reach that problem, however, the "adequate protection" problem must be addressed.

*The Facts [Are Undisputed]*

The debtor, Max Triplett filed a Chapter 11 petition on October 8, 1987. Then (and now) he owed the National Bank of Commerce—Colonnade, N.A., about $250,-000.00. That debt is secured by property appraised at $337,000.00, so the debt continues to accrue interest, charges, and so

forth. See § 506(c). The collateral for the debt is:

| COLLATERAL | VALUE |
| --- | --- |
| Real Property | $200,000.00 |
| 1928 Pierce Arrow | 60,000.00 |
| 1972 Rolls Royce | 25,000.00 |
| J.D. 310 Backhoe | 8,000.00 |
| J.D. 570A Grader | 18,000.00 |
| 1981 Tampo Roller | 8,000.00 |
| J.D. Loader (Tractor) | 18,000.00 |
| TOTAL VALUE | $327,000.00 |

The rents from the real property are also collateral for the NBC loan. The rents are presently $1,661.16 per month.

Naturally, the debtor wants to use the rental income; the creditor wants to restrict use of this "cash collateral".

### The Law [Is Disputed]

The parties agreed on only two points: The rents are "cash collateral" under § 363 and the creditor NBC has acted to "perfect" its interest in the rents using the appropriate mechanisms set forth in *In re Village Properties, Inc.*, 723 F.2d 441 (5th Cir.1984) and *In re Casbeers*, 793 F.2d 1436 (5th Cir.1986).

The disagreement is very simple. The debtor wishes to use the rental income ("cash collateral") to service expenses of the property and also to pay general expenses of the case—in other words, the debtor wishes to use the cash collateral without restriction. NBC disagrees and alleges that the debtor has not offered "adequate protection" for the cash collateral. The debtor's rejoinder is to simply point to the $80,000 equity cushion.

### A. Adequate Protection

Secured creditors are entitled to "adequate protection" where the debtor retains use or possession of collateral during the pendency of a proceeding. The term is used in § 362, 363 and 364, and means the same thing in each section. The term is, of course, not defined but merely "illustrated" by § 361. *See In re Timbers of Inwood Forest Assoc's Ltd.*, 793 F.2d 1380, 1388 (5th Cir.1986) (the original panel opinion).

Most courts have ruled that any protection is "adequate" as long as the secured creditor's interests are preserved at "status quo" or can be protected from dissipation by cash payments, replacement liens or the like. Occasionally, cases arise in which the debtor's conduct—as opposed to actual peril to the creditor's interests—mandates a finding that there is no "adequate protection". *See generally* 2 *Collier on Bankruptcy*, § 361.01[5] (15th ed. 1988).

Where cash collateral is involved, there has been some debate as to whether an "equity cushion" is ever sufficient to provide adequate protection. With ordinary collateral, an equity cushion is generally considered to be sufficient (although not necessary). *See, e.g., In re Alyucan Interstate Corp.*, 12 B.R. 803, 4 C.B.C.2d 1166, 1072–74 (Bankr.D.Utah 1981) (equity cushion not required).[1]

Where cash is involved, however, at least one court has held that the presence of an equity cushion does not alone justify unlimited use of cash collateral. *In re Earth Lite, Inc.*, 9 B.R. 440, 444 (Bankr.M.D.Fla. 1981):

> "[T]his Court is satisfied that the Debtor should not be permitted to use cash collateral without making some payments to the secured party just because it has, at the commencement of the case, a meaningful equity cushion in the collateral. To accept this proposition would mean that a debtor may freely use cash collateral until the collateral is reduced

---

1. For some reason, commentators seem to believe that *Alyucan* rejects the utilization of an equity cushion to provide adequate protection. That's simply not the case. All Judge Mabey did—in dicta—was to discuss his objection to the mechanical application of an equity cushion analysis. Mabey rejected those cases which would require relief from stay "mechanically" (or "automatically") upon impairment of a cushion, or upon absence of a cushion, or in either case. The entire discussion of the "equity cushion" is confined to situations in which the stay should not be lifted *even though there is no equity cushion.* For articles which seem to miss the point of the opinion, *See, e.g.,* Comment, § 364(d) Superpriority Financing: Has Secured Creditor Met His Match?, 5 *Bankr. Dev. J.* 109, 118–119 (1988); Flaschen, Adequate Protection for Oversecured Creditors, 61 *Bankr. L.J.* 341, 344–45 (1987).

to the amount of indebtedness during which time the secured party is deprived of income, for which it bargained when the lien was granted."

■ But Judge Paskay's holding is not correct. First, as *Alyucan* demonstrates, the presence of an equity cushion is not required under the concept of adequate protection—only the preservation of the value of the lien is required. *See In re Alyucan Interstate Corp.*, 12 B.R. 803, 4 C.B.C.2d 1066, 1074 (Bankr.D.Utah 1981). Therefore, mere "consumption" of the cushion does not—alone—violate the concept of adequate protection.

Further, the income stream is almost never "bargained for"; use of rent assignment clauses and other devices are merely collateralization techniques. The creditor may be interested in the stream but has in no sense bargained to receive the stream in a State like Texas where the creditor cannot be a mortgagee in possession. *See In re Max Tripplet*, 84 B.R. 84 (Bankr.W.D. Tex.1988).

Also, to say that the creditor expected to receive the income stream is not appropriate where the creditor clearly has bargained for collateral of a value far in excess of the amount of the debt.

■ Rather, restriction of the use of cash collateral should only occur where the facts show that failure to restrict use may "impair" the creditor and deny the creditor adequate protection. And, while the burden may be upon the debtor, the debtor has clearly met its burden in this case. *See In re Martin*, 761 F.2d 472, 477 (8th Cir.1985).

### Conclusion

■ In cases where the debtor clearly demonstrates that the value of collateral adequately protects the interests of the secured creditor, income from the collateral —*i.e.*, § 363 "cash collateral"—may be used by the debtor for the general benefit of the estate and need not be devoted exclusively to the protection of the creditor or the collateral.

### Comment [2]

■ This case and opinion reflect the concerns set forth in *In re Sentry Park Ltd.*, 87 B.R. 427, 431 n. 6 (Bankr.W.D. Tex.1988) and R. Haines, Good Faith: An Idea Whose Time Has Come & Gone, *North Bankr.L.Adv.* 1–8 (April 1988) (Callaghan & Co.). Both Judge Clark and Mr. Haines argue that motions for relief under § 362 should not be substituted for proceedings under § 1112(b). The same is true of proceedings under § 363 to restrict use of cash collateral.

The real concerns of the creditor bank are set forth in its brief:

> While more than 120 days has elapsed since the filing of bankruptcy, Triplett has failed to sell a single piece of ·the personal property. Triplett has never alleged that a Rolls Royce, a 1928 Roadster, or four pieces of construction equipment would be necessary for his reorganization.... Triplett ... is not willing to part with his classic cars.

In situations like this, if the creditor believes the case is being delayed merely so that a rich man can protect his toys, the proper approach is § 1112(b):

> Except as provided in subsection (c) of this section, on request of a party in interest or the United States trustee, and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title or may dismiss a case under this chapter, whichever is in the best interest of creditors and the estate, for cause, including—
>
> (1) continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation;
>
> (2) inability to effectuate a plan;
>
> (3) unreasonable delay by the debtor that is prejudicial to creditors;
>
> (4) failure to propose a plan under section 1121 of this title within any time fixed by the court;
>
> ....

**2.** The court apologizes to counsel for indulging in the insertion of this comment, for both lawyers had to put up with this sort of thing when they were my students.

Here, the focus on collateral and its use interferes with proper analysis of the case. Instead of being concerned with one item of "cash", the creditor should draw the court's attention to all of the problems with the case so that the debtor can either be placed on a timetable [3], the case converted, or the case dismissed.

3. Courts in this district frequently order the debtor to produce a plan or else within a specified period of time. The "or else" may be relief from stay, dismissed, conversion, or appointment of a trustee.