### In re CONSTABLE PLAZA ASSOCIATES, L.P., Debtor.

**Bankruptcy No. 91 B 20249.**

United States Bankruptcy Court, S.D. New York.

March 14, 1991.

**100**

Angel & Frankel, P.C., New York City, for debtor; John H. Drucker, of counsel.

McNamee, Lochner, Titus & Williams, P.C., Albany, N.Y., for Connecticut Mut. Life Ins. Co.; Peter A. Pastore, of counsel.

Ralph Nobile, Receiver, Bronxville, N.Y.

Wilkie Farr & Gallagher, Blueberry Harbor Corp., New York City, Donna H. Lieberman, of counsel.

## DECISION ON MOTION FOR AN ORDER AUTHORIZING DEBTOR'S USE OF ASSETS IN WHICH CONNECTICUT MUTUAL LIFE INSURANCE COMPANY MAY ASSERT AN INTEREST

HOWARD SCHWARTZBERG,
Bankruptcy Judge.

Connecticut Mutual Life Insurance Company ("Mutual") has moved for an order directing the Chapter 11 debtor, Constable Plaza Associates, L.P., to turnover all rents from the debtor's office building in New Rochelle, New York received after the appointment of a state court receiver. Alternatively, Mutual seeks to continue the receiver in possession as custodian of the rents pursuant to 11 U.S.C. § 543(d)(1). The debtor, in turn, has moved for an order under 11 U.S.C. § 363(c)(2)(B), authorizing its use of the rents as cash collateral solely for the maintenance, management, repairs and charges incurred with respect to the office building which generates the rents in question. The hearing was held on March 12, 1991.

### BACKGROUND FACTS

On February 20, 1991, the debtor filed with this court its voluntary petition for reorganizational relief under Chapter 11 of the Bankruptcy Code and continued in possession and management of its property as a debtor in possession in accordance with 11 U.S.C. §§ 1107 and 1108.

The debtor is a limited partnership formed for the purpose of purchasing and operating an office building in New Rochelle, New York and a parcel of undeveloped land across the street from the office building. The debtor purchased its interest in the real property in question in December of 1988 from Blueberry Harbor Corporation ("Blueberry"), subject to a preexisting mortgage held by Mutual in the face amount of $3,500,000.00. Additionally, a purchase money mortgage in the face amount of $700,000.00 was given by the debtor to Blueberry. The debtor also gave Blueberry a $100,000.00 mortgage on the vacant parcel of real estate across the street from the office building against which Mutual holds a first mortgage.

The Mutual first mortgage provides for a balloon payment of $3,500,000.00 principal on December 22, 1991. Interest is to be paid in monthly installments at the rate of 10 percent, amounting to approximately $29,166.00 per month. The first mortgage also contains a provision in Section 13.07 that in the event of a mortgage default, the mortgagor assigns to the mortgagee "as additional security for the indebtedness ... the rents, issues and profits, and any and all deposits held as security under said leases."

The debtor defaulted under the mortgage note and mortgage. On January 7, 1991, Mutual commenced a mortgage foreclosure action against the debtor in the New York Supreme Court, Westchester County. By order dated January 25, 1991, the state court judge appointed a receiver in the mortgage foreclosure action. Thereafter, the tenants at the office building were notified to pay rent to the receiver.

On February 25, 1991, the parties appeared in this court in connection with the debtor's motion for contempt against Mutual for wilfully violating the automatic stay by urging the state court receiver to collect rents from the office building tenants. The debtor also sought a preliminary injunction. The motions were resolved by the parties whereby the debtor would collect rents and place them in a segregated account pending a determination of the motions made by the debtor and Mutual which were returnable thereafter and which are now the subject of the instant proceeding.

### DISCUSSION

■ Mutual argues that by obtaining the appointment of a receiver of rents and profits prior to the filing of the Chapter 11 petition, it perfected a valid recorded security interest entitling it to possession of the rents. Mutual reasons that the debtor's interest in the rents was cut off before the debtor filed its Chapter 11 petition with the result that as to the rents, the debtor has absolutely no interest in the rents which could be regarded as property of the estate within the context of 11 U.S.C. § 541.

■ There is no question that Mutual's right to the rents under the prepetition assignment of rents clause in the mortgage and the subsequent appointment of a state court receiver must be determined under New York law. *See Butner v. United States*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979) (the determination of property rights in the assets of a debtor's estate is made according to state law). It is settled law in New York that an assignee of future rents who has done nothing to perfect its rights will not prevail over an execution creditor or a trustee in bankruptcy. *Sullivan v. Rosson*, 223 N.Y. 217, 119 N.E. 405 (1918). The Second Circuit in *In re Brose*, 254 Fed. 664 (2d Cir.1918) early held that as a result of the *Sullivan* case an assignment of rents clause in a mortgage operates merely as a pledge of the rents, to which the pledgee does not become entitled until it asserts its rights. The court also quoted, with approval, the

following language of the United States Supreme Court:

> The general rule is that the mortgagee is not entitled to the rents and profits of the mortgaged premises until he takes actual possession, or *until possession is taken, in his behalf, by a receiver....* (Emphasis added)

*Freedman's Savings Co. v. Shepherd*, 127 U.S. 494, 502, 8 S.Ct. 1250, 1254, 32 L.Ed. 163 (1888).

In the instant case, a receiver was appointed on Mutual's behalf in the state court foreclosure action before the debtor filed its Chapter 11 petition. Accordingly, Mutual has a *prima facie* basis for asserting that the state court's prepetition appointment of a receiver pursuant to the assignment of rents clause in the mortgage transferred all title and interest in the rents prior to the commencement of the debtor's Chapter 11 case. However, the assignment of rents clause in the mortgage specifically states that such assignment was "as additional security for the indebtedness."

In accordance with *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983), the concept of property of the estate is to be given a broad application. Manifestly, Mutual did not cut off all of the debtor's property rights with respect to the rents; Mutual received an assignment of the rents as security for the mortgage debt, so that when the mortgage debt was satisfied, the debtor's right to receive the rents resumed. Obviously, Mutual does not claim an absolute right to collect rents indefinitely, even after such time as the debtor might have satisfied the mortgage debt.

The issue as to whether or not an assignment of rents clause in a mortgage creates an absolute assignment of the rents upon a mortgage default, or merely an assignment for security purposes, is important in determining if the mortgagee has perfected its interest. Thus, the issue is not whether or not the mortgagee has an absolute right forever to collect rents regardless of a possible future satisfaction of the mortgage, but instead, whether the mortgagee's de-

fault, without more, gives rise to the mortgagee's right to collect the rents during the mortgage default phase. Hence, the distinction is significant in resolving the issue of perfection for the purpose of determining the mortgagee's right to collect the rents, and is not dispositive of the question as to whether the mortgagee has an absolute right to collect rents indefinitely, regardless of a satisfaction of the mortgage by the mortgagor.

As the Ninth Circuit Court of Appeals observed in *Equitable Mortgage Co. v. Fishman (In re Charles D. Stapp of Nevada, Inc.)*:

> Under California law, if an assignment is absolute, the beneficiary of the deed of trust is entitled without further action to all rents accruing from the date of notice of the default. If the assignment-of-rents provision is construed as a pledge of the rents as additional security, the rents inure to the bankruptcy trustee until the trust deed beneficiary perfects his claim to them.

*Equitable Mortgage Co. v. Fishman (In re Charles D. Stapp of Nevada, Inc.)*, 641 F.2d 737 (1981), *Great West Life Assurance Co. v. Rothman (In re Ventura–Louise Properties)*, 490 F.2d 1141, 1143–44 (9th Cir.1974). In the *Stapp* case, the court referred to the deed of trust, which is equivalent to a mortgage in New York, and concluded that the phrase "as additional security" did not appear in the assignment language. Therefore, the court concluded that the assignment was absolute. The term "absolute" did not mean that the mortgagee was forever entitled to the rents regardless of a possible satisfaction of the mortgage or deed of trust. Instead, the court said:

> The assignment is "absolute" in the sense that it was effective upon default without further action by the creditor.
>
> \*   \*   \*   \*   \*   \*
>
> "Absolute" does not mean, however, that the assignee is relieved of all obligation to account *or that the right to the rents is independent of the underlying debt.* Upon foreclosure, the creditor of course, *must account for any excess* derived

from the sale and rents collected between the date of the default and the date of foreclosure sale *over and above the amount of the obligation owed.* (Emphasis added)

*Id.* at 740.

In the instant case, Mutual was required to obtain the appointment of a receiver, which it did, in order to establish its right to collect the rents under the assignment of rents clause in the mortgage. *See Casbeer v. State Federal Savings & Loan Assoc. (In re Casbeer)*, 793 F.2d 1436, 1442 (5th Cir.1986). Mutual was not entitled, without further action, such as the appointment of a receiver, to collect the rents accruing from the date of the notice of default. Therefore, under New York law, the appointment of a receiver triggered Mutual's right to collect the rents, because the assignment of rents clause was merely a pledge and was not an absolute assignment until the receiver was appointed. *See Sullivan v. Rosson*, 223 N.Y. 217, 119 N.E. 405 (1918); *In re Brose*, 254 Fed. 664 (2d Cir.1918). Indeed, the appearance in the assignment of rents clause of the phrase "as additional security" lends further support to the conclusion that the parties contemplated that no absolute assignment of the rents was to take effect upon the occurrence of a default and that further action was required by the mortgagee, such as the appointment of a receiver, before Mutual was entitled to collect the rents.

■ The issue as to Mutual's right to collect the rents is not disputed. However, what is in question is the nature of the interest that Mutual acquired. Even if Mutual had an absolute assignment, rather than a pledge which required further action, it would not follow that the debtor's interest in the rent was totally cut off. *Equitable Mortgage Co. v. Fishman (In re Charles D. Stapp of Nevada, Inc.)*, 641 F.2d at 740. In a recent case in this district, District Judge Robert J. Ward, concluded that notwithstanding an absolute assignment under Georgia law regarding a building located in Georgia, the debtor, nonetheless, retained a residual interest in the rents which were assigned and was

entitled to an accounting for any rents beyond the amount of the mortgage debt. *Travelers Indemnity Co. v. Grant Associates (In re Grant Associates)*, 1991 WL 21228, 1991 U.S. Dist. Lexis 1245 (S.D.N.Y. Feb. 5, 1991). (The absolute assignment simply meant that the creditor had a perfected security interest in the rents as of the default, without further action being required).

In view of the fact that the debtor retains a residual interest in the rents assigned to Mutual "as additional security", it follows that such interest in the rents constitutes property of the estate within the meaning of 11 U.S.C. § 541. Therefore, it must next be determined if such cash collateral is available for use by the debtor pursuant to 11 U.S.C. § 363(c)(2)(B).

*Continued Receiver's or Debtor's Use of Cash Collateral*

■■■ A custodian with knowledge of a bankruptcy case, such as the receiver in this case, has an absolute duty under 11 U.S.C. § 543 to refrain from any further action in the administration of property of the debtor's estate and must deliver to the debtor in possession any property of the estate held by the custodian at the time knowledge of the bankruptcy case was acquired. Although the receiver in this case has not yet collected any rents which might be subject to turnover, Mutual seeks to have the receiver continue in place and collect all future rents from the debtor's office building and apply such rents towards the maintenance, taxes, and expenses of operating the office building. On the other hand, the debtor seeks to use the rents as cash collateral for the same purpose, namely, for the exclusive costs of operating the office building.

In order to sustain its position, Mutual relies on 11 U.S.C. § 543(d)(1). This provision is an exception to the turnover requirement imposed by 11 U.S.C. § 543(b)(1) and excuses turnover "if the interests of creditors ... would be better served by permitting a custodian to continue in possession, custody or control of such property ...". The debtor also relies upon an exception

with respect to cash collateral, because 11 U.S.C. § 363(c)(2) forbids a debtor to use, sell, or lease cash collateral. However, 11 U.S.C. § 363(c)(2)(B) provides an exception to this general rule and authorizes the debtor's use of cash collateral on condition that "the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section."

■■■ The exception to the general rule in 11 U.S.C. § 543(b)(1) mandating a turnover of property of the estate by a custodian, is in essence a modified abstention provision. *See In re Pine Lake Village, Apartment Co.*, 17 B.R. 829, 833 (Bankr.S. D.N.Y.1982). Under this exception, as expressed in 11 U.S.C. § 541(d)(1), the court must consider the interests of all the debtor's creditors. One of the factors that the court should consider with respect to this discretionary exemption is whether there will be sufficient income to fund a successful reorganization. *In re Powers Aero Marine Services, Inc.*, 42 B.R. 540 (Bankr.S.D. Tex.1984). Another factor for consideration is whether the debtor will use the turned over property for the benefit of the creditors. *In re CCN Realty Corp.*, 19 B.R. 526, 529 (Bankr.S.D.N.Y.1982). A third factor for consideration is whether there has been mismanagement by the debtor. *In re WPAS, Inc.*, 6 B.R. 40 (Bankr.M.D.Fla.1980). In deciding whether to allow a receiver to continue to collect and hold property of the estate, a bankruptcy court should also consider whether or not there are avoidance issues raised with respect to the property retained by the receiver, because a receiver does not possess avoiding powers for the benefit of the estate. *In re Property Management Investment, Inc.*, 19 B.R. 202, 206 (Bankr. M.D.Fla.1982).

In the instant case, the debtor has only recently filed its Chapter 11 petition and it is too early to determine the likelihood of a successful reorganization, other than to note that under either the debtor's or Mutual's approach, the rents will be applied towards the same purpose; the maintenance and expenses in the operation of the

debtor's office building. Moreover, under either approach, the rents will be used for the benefit of creditors because it is in their interests to preserve the operation of the office building.

A recent bankruptcy decision *In re Rancourt*, 123 B.R. 143, 21 B.C.D. 494 (Bankr.D.N.H.1991), reflects the fact that the court was mindful of the point that a debtor was entitled to use rents as cash collateral in the early stage of a case, rather than turn over the rents to a mortgagee with an assignment of rents clause in its mortgage because the mortgagee was adequately protected.

> In the present case, on its particular facts, the issue before the Court really comes down to the question as to whether the movants are entitled *at this early stage* of the case to prohibitions or conditions upon the use of rents "as is necessary" to provide them adequate protection pursuant to § 363(c) of the Bankruptcy Code. It is obvious that the movants are in no real danger at this state of not being covered in full with regard to their secured debt. This is true because rentals, uniquely among cash collateral categories, have the additional dimension of the real property mortgage reaching an equity cushion in the underlying real property to safeguard the secured debt. In my view the language "as is necessary" in § 363(c) can appropriately be construed to take into account the unique situation of rents—as distinguished from the other types for cash collateral which have no such underlying protection.

*In re Rancourt*, 123 B.R. 143, 152, 21 B.C.D. 494, 499 (Bankr.D.N.H.1991).

At least for the purposes of the motions before the court no issues have been raised as to any mismanagement by the debtor other than a default in the payment of monthly mortgage interest installments. As to issues implicating avoiding powers, the debtor has raised a question as to whether Mutual's perfection of its assignment of rents by the appointment of a receiver within ninety days from the Chapter 11 filing constitutes a voidable preferential transfer proscribed under 11 U.S.C.

§ 547(b). This issue is yet to be heard by the court. Even if the receiver is permitted to collect future rents the debtor will still be in a position to raise this issue. However, if the debtor is correct as to this point, the receiver's standing will be eliminated. Until this issue is resolved, the receiver's right to collect rents and hold property of the estate will continue under a cloud. This disputed issue undermines the strength of Mutual's request for an exception to the turnover requirement imposed under 11 U.S.C. § 543(b)(1).

A more significant factor to be considered is that the state court foreclosure action has been halted by the automatic stay imposed under 11 U.S.C. § 362. Therefore, if the basic action in which the state court receiver was appointed is no longer active, there is no reason to excuse the receiver's compliance with 11 U.S.C. § 543(b)(1) in order to activate a state court receiver whose appointment was ancillary to the enjoined foreclosure action. Unless and until the automatic stay is modified or terminated, the administration of the debtor's case and the disposition of property of the estate should continue under the aegis of this court and in accordance with the general provisions of the Bankruptcy Code and Rules. In light of all the circumstances in this case, there does not appear to exist any cogent reason why the court should exercise its discretion and enter an order excepting Mutual and the state court receiver from complying with the requirements of 11 U.S.C. § 543(b)(1).

### *Cash Collateral*

■ The debtor has the burden of demonstrating that the creditor will be adequately protected if it is authorized to use the cash collateral, or rents, which have been assigned to Mutual "as additional security" for the debtor's obligation under the mortgage and note with respect to the debtor's office building. *See* 11 U.S.C. § 363(e). *See also In re Markim, Inc.*, 15 B.R. 56 (Bankr.E.D.Pa.1981). Mutual concedes that it is presently over-secured and there exists an equity cushion between the amount of its claim and the value of the secured property. However, Mutual ar-

gues that this cushion will decline because it is losing the value of the interest it would earn if it could collect and deposit the rents in its own bank account. The concept of lost opportunity has been rejected with respect to an undersecured creditor. *See United Savings Assoc. of Texas v. Timbers of Inwood Forest Assoc., Ltd.,* 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988). In the case of an oversecured creditor, the right to interest will continue to accrue in accordance with 11 U.S.C. § 506(b). *See United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989). Hence, to the extent that the debtor is unable to bank the assigned rents it will be deprived of the interest to which it would otherwise be entitled. However, this argument loses significance in the light of Mutual's objective for claiming the assigned rents. Mutual seeks to apply the rents, or cash collateral, for the purpose of maintaining and operating the debtor's office building. Hence, to the extent the rents are plowed back into the office building there will be that many fewer funds in its bank account accruing interest. The issue of lost interest will have significance only with respect to those funds not needed to operate the office building.

The debtor does not now seek unfettered use of the rents, or cash collateral. The debtor would like to collect the rents in order to pay the expenses relating to the operation of its office building. Therefore, any expenses in excess of this proposed use should be turned over to Mutual pursuant to its right to receive or collect the assigned rents. The debtor may use the rents only for the purpose of operating the office building. To this extent, Mutual is adequately protected by the admitted equity cushion between the value of the building and the debtor's obligation to Mutual. *See In re Triplett,* 87 B.R. 25, 26 (Bankr. W.D.Tex.1988); *In re Oak Glen R-Vee,* 8 B.R. 213, 217 (Bankr.C.D.Cal.1981). Furthermore, the debtor's plowing back rents solely for the purpose of maintaining and operating its office building will serve to preserve or enhance the value of the building which, in turn, will protect the collateral covered by Mutual's mortgage.

Manifestly, the application of the rent income solely to maintain and repair the property so as to prevent further deterioration will enhance the value of the property which serves as the collateral for the plaintiff-mortgagee's claim. The protection and maintenance of the plaintiff-mortgagee's collateral, without any diversion of funds to the debtor, clearly ensures that the plaintiff-mortgagee's investment is adequately protected.

*In re Pine Lake Village Apartment Co.,* 16 B.R. 750, 756 (Bankr.S.D.N.Y.1982).

Additionally, Mutual did not contend that the debtor's operation of the office building would impair its secured interest in the collateral. It has been held that a creditor did not bargain for the income stream when the creditor bargained for collateral in excess of the debt. *See In re Triplett,* 87 B.R. 25, 27 (Bankr.W.D.Tex.1988). ("Furthermore, the income stream is almost never 'bargained for'; use of rent assignment clauses and other devices are merely collateralization techniques."). Therefore, the debtor will be allowed to use the rents generated by its office building, but only for maintenance, repairs, taxes, insurance and operating expenses with respect to the building. All the expenditures shall be specifically accounted for in detailed monthly reports which the debtor shall file with the court, the U.S. Trustee's office and with Mutual. Any rents in excess of the amounts plowed back into the office building shall be turned over to Mutual each month, unless the debtor obtains Mutual's consent that the excess monthly rents will be required to satisfy specifically designated future expenses pertaining to the building. In the event that the parties cannot agree as to a specific disputed future expense item, or any other proposed use to which the rents are to be applied, they may submit the issue to this court for prompt determination.

## CONCLUSIONS OF LAW

1. This court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. § 1334 and 28 U.S. § 157(a). This is a core proceeding in accordance with 28 U.S.C. § 157(b)(2)(E) and (M).

2. Mutual's motion for an order pursuant to 11 U.S.C. § 543(d)(2) excusing the state court receiver from complying with 11 U.S.C. § 543(b)(1) is denied.

3. The assignment of rents clause in the mortgage "as additional security" and the prepetition appointment of a state court receiver did not cut off all of the debtor's property interests in the future rents with respect to its office building; the debtor continues to possess a residual interest in the rents which results in characterizing such rents as property of the estate within the meaning of 11 U.S.C. § 541.

4. Based on the undisputed facts in this case the debtor may use the rents derived from its office building, which are subject to Mutual's assignment of rents clause in its mortgage covering such building, solely for the purpose of maintaining and operating the building in accordance with the procedure expressed in the foregoing decision and in accordance with 11 U.S.C. § 363(c)(2)(B). The monthly rents in excess of such expenses shall be remitted to Mutual on a monthly basis.

SETTLE ORDER in accordance with the foregoing decision.