### In re SOUTHERN ILLINOIS RAILCAR CO., Debtor.

Nos. 02–30456, 02–30457.

United States Bankruptcy Court, S.D. Illinois.

Dec. 11, 2002.

D. Phillip Anderson, Peoria, IL, United States Trustee.

Linus L. Baker, Prairie Village, KS, Harold G. Belsheim, O'Fallon, IL, Renee Bassett Butler, Wood River, IL, Spencer P. Desai, Polsinelli Shalton Welte, P.C., St. Louis, MO, Robert E. Eggmann, Clayton, MO, Teresa A. Generous, Belleville, IL, John L. Gilbert, Belleville, IL, David L. Going, Armstrong Teasdale LLP, St Louis, MO, Laura K. Grandy, Mathis Marifian Richter and Grandy Ltd, Belleville, IL, Gary E. Green, Coston and Lichtman, Chicago, IL, Scott Greenberg, St Louis, MO, Eugene Gross, DuQuoin, IL, Stephen E. Gruendel, Moore & Van Allen, PLLC, Charlotte, NC, John J. Hall, St Louis, MO, Robert L. Jackstadt, Mickes, Tueth, Keeney, Cooper, et al, Edwardsville, IL, Peter D. Kerth, St Louis, MO, Mary Ann Kilgore, Union Pacific Railroad Company, Omaha, NE, Robert Kleinman, Ross & Hardies, Chicago, IL, Thomas J. Noonan, Law Offices of Thomas J. Noonan P.C., St Louis, MO, Ronald L. Pallmann, Clayton, MO, Larry E. Parres, St Louis, MO, Robert Woods Phillips, Thompson Coburn LLP, St Louis, MO, Keith D. Price, St Louis, MO, Toni Price, San Antonio, TX, Geoffrey T. Raicht, Sidley Austin Brown & Wood LLP, New York City, David H. Rubin, Thompson Coburn LLP, St. Louis, MO, Daniel A. Silver, Carbondale, IL, Katherine Margaret Smith, Edwardsville, IL, Fred Strege, Smith & Strege Ltd, Wahpeton, ND, Robert M. Susman, St Louis, MO, David A. Warfield, St Louis, MO, Samuel C. Wisotzkey, Kohner, Mann & Kailas, S.C., Milwaukee, WI, Amy T. Tucker, St, Louis, MO, Lori G. Robertson, Linebarger, Goggan, Blair et al., Austin, TX, Jennifer Arbogast, Bryan Cave LLP, Daniel C. Nester, St. Louis, MO, Jennifer Arbogast Merlo, Bryan Cave LLP, St. Louis, MO, Daniel C. Nester, St. Louis, MO, Lori G. Robertson, Linebarger Goggan Blair et al, Austin, TX, Steven M. Wallace, St. Louis, MO, for Creditors.

Edward Heller, Murphysboro, IL, pro se.

Amy E. Rose, Murphysboro, IL, pro se.

Terry Sharp, Mt. Vernon, IL, pro se.

David A. Sosne, St. Louis, MO, Bonnie L. Clair, St. Louis, MO, Michael A. Fagone, Portland, ME, Theodore J. Tacconelli, Wilmington, DE, for Debtors.

## *OPINION*

GERALD D. FINES, Chief Judge.

This matter having come before the Court on a Motion to Lift Stay and for Adequate Protection of Wells Fargo Equipment Finance Company and Debtor's Objection Motion to Lift Stay and for Adequate Protection of Wells Fargo Equipment Finance Company; the Court, having heard arguments of counsel and being otherwise fully advised in the premises, makes the following findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

### *Findings of Fact*

On November 12, 2002, by agreement, the parties filed a Joint Stipulation of Facts which contains the material facts relating to the matters presently before the Court. That Joint Stipulation of Facts, as filed on November 12, 2002, is incorporated herein as though fully set forth in this Opinion. The Court finds it unnecessary to reiterate the stipulated facts for the purposes of this Opinion.

## Conclusions of Law

A secured creditor only may receive relief from the automatic stay pursuant to § 362(d) of the United States Bankruptcy Code if that creditor's interest in property is not protected adequately or if the debtor does not have equity in such property and that property is not necessary to an effective reorganization. *See:* 11 U.S.C. § 362(d)(1) & (2). Wells Fargo asserts a security interest or lien in certain railcars (the "Equipment") and a railcar lease between Southern Illinois Railcar Co. (SIRC), as lessor, and OmniSource, LLC, as lessee (the "OmniSource Lease," with the Equipment the "Collateral"), and seeks to have the automatic stay lifted to permit it to foreclose upon the Collateral.

 As a creditor seeking to lift the automatic stay, Wells Fargo has the burden of demonstrating the existence, the validity, and the perfection of its security interest in the Collateral. Whether Wells Fargo can meet this burden is dependent upon state law, because state law determines whether a valid security interest exists in any property. *See: Butner v. United States,* 440 U.S. 48, 54–57, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). Article 9 of the Uniform Commercial Code (the "UCC"), governs the creation of security interests in personal property. *See:* U.C.C. § 9–101 cmt. 1 (stating that the UCC "provides a comprehensive scheme for the regulation of security interests in personal property and fixtures."). Further, the application of the UCC in this matter should be governed by New York law, because Loan # 3711 provides that it "shall in all respects be governed by and construed in accordance with the internal laws of the State of New York, including all matters of construction, validity and performance." *See:* Stipulation Exhibit B, ¶ 14. However, because New York and Illinois adopted virtually identical versions of the revised UCC, case law from both states that interprets the UCC is persuasive and cited herein.

Section 9–203 of the UCC governs the enforceability of security interests. *See generally:* U.C.C. § 9–203; Ill.Ann.Stat., ch. 810, para. 5/9–203 (Smith–Hurd 2002); N.Y. Uniform Commercial Code § 9–203 (McKinney 2002). The relevant portion of that statute provides that a security interest only attaches to collateral so as to be enforceable against other parties if value has been given, if the debtor has rights in the collateral, and if the debtor has authenticated a security agreement describing the collateral. *See:* U.C.C. § 9–203(b)(1–3); *accord* Ill.Ann.Stat., ch. 810, para. 5/9–203(b)(1–3) (Smith–Hurd 2002) (same), N.Y. Uniform Commercial Code § 9–203(b)(1–3) (McKinney 2002) (same). There are no disputes before the Court regarding whether Wells Fargo gave value for the Collateral, whether SIRC had rights in the Collateral, or whether SIRC executed writings regarding Loan # 3711.

 The UCC provides that a description of the property is adequate if it "reasonably identifies" the collateral. *See:* U.C.C. § 9–108(a); *accord* Ill.Ann.Stat., ch. 810, para. 5/9–203(b)(1–3) (Smith–Hurd 2002), N.Y. Uniform Commercial Code § 9–203(b)(1–3) (McKinney 2002). Moreover, collateral is reasonably identified as long as the "identity of the collateral is objectively determinable." *See:* U.C.C. § 9–108(b)(6); *accord* Ill.Ann.Stat., ch. 810, para. 5/9–108(b)(6) (Smith–Hurd 2002), N.Y. Uniform Commercial Code § 9–108(b)(6) (McKinney 2002). Drawing from case law, this means that property is reasonably identified in a security agreement if a third party could determine what items of the debtor's collateral are subject to the creditor's security interest. *See, e.g.: In re Bennett Funding Group, Inc.,* 255 B.R. 616, 636 (N.D.N.Y.2000) (applying

the New York UCC to find that a description must be sufficient to allow a third party to distinguish between collateral and like items that a debtor owns); *In re Niles*, 72 B.R. 84, 86 (Bankr.N.D.Ill.1987) (applying the Illinois UCC to find a description inadequate if a third party could not identify the collateral without additional information); *See also: Aronson Furniture Company v. Johnson*, 47 Ill.App.3d 648, 653, 7 Ill.Dec. 776, 365 N.E.2d 61 (1977) (applying the Illinois UCC to find that "the description must be specific enough to allow the creditor's agents to distinguish between the goods subject to the security interest and other consumer goods owned by the debtor which may be similar in type but not subject to the security interest."). Where a debtor owns numerous similar items of collateral that cannot be distinguished by a more general description, a description of collateral is insufficient without the correct serial numbers of collateral. *See: Bennett Funding*, 255 B.R. 616, 636–37 (applying the New York law to require a security agreement to include serial numbers of office equipment when the pledged items otherwise were indistinguishable from similar items owned by the debtor but not pledged to the creditor); *accord In re Keene Corp.*, 188 B.R. 881, 901 (Bankr.S.D.N.Y.1995) (applying Illinois law to require a security agreement to have a detailed description of each Treasury note pledged when the debtor's account held numerous Treasury notes similar to the collateral at issue). A description of collateral in a security agreement is not adequate if the writing had unfilled blanks or omitted attachments that normally would provide the description of the collateral. *See. e.g.: In re Kevin W. Emerick Farms, Inc.*, 201 B.R. 790, 797–798 (Bankr.C.D.Ill.1996) (applying Illinois law to find creditors' descriptions of collateral inadequate where one security agreement had blanks instead of the necessary description of the property and where the other security agreement described the collateral only in an attachment that was neither attached to or incorporated in the security agreement); *Rusch Factors, Inc. v. Passport Fashion Limited*, 67 Misc.2d 3, 322 N.Y.S.2d 765, 768 (N.Y.Sup.Ct.1971) *aff'd*, 38 A.D.2d 690, 327 N.Y.S.2d 536 (1971), *appeal denied*, 30 N.Y.2d 482, 330 N.Y.S.2d 1026, 280 N.E.2d 895 (1972) (applying New York law to find security agreement unenforceable because documents that would have described collateral and that purported to be incorporated in the agreement by reference were not attached to the agreement).

■ Under the cases cited above, Wells Fargo's security agreements fail to include an adequate description of its Equipment collateral. Loan # 3711 purports to secure payment and performance with a lien in favor of the creditor on "Equipment as more fully described on Schedule A." *See:* Stipulation Exhibit B, at 1. However, no Schedule A is attached to the Loan and Security Agreement. *See:* Stipulation Exhibit b. This description is inadequate because it fails to identify which of the Debtor's thousands of railcars would be subject to Wells Fargo's lien such that any execution could occur. As a result, under case law interpreting the description requirement of the UCC, Wells Fargo did not obtain any enforceable security interest. Neither the Rental Rider, the July Rider, the Assignment Agreement, nor the Substitution Agreement cure the defect in Loan # 3711's description of the Equipment. The Rental Rider permits SIRC to rent equipment and assigns the proceeds from the rental of "Equipment described in the Agreement and any other documents annexed hereto." *See:* Stipulation Exhibit D, at 1, ¶¶ 1–2. The Rental Rider defines "the Agreement" as Loan # 3711. However, as stated above, Loan # 3711

does not describe any equipment. Moreover, no listing of equipment is attached to the Rental Rider. *See:* Stipulation Exhibit D. This omission clearly does not cure Loan # 3711's defective description of the collateral.

The July Rider provides only for a grant of an assignment of the OmniSource Lease to Wells Fargo. *See:* Stipulation Exhibit E, at 1, ¶ 2. The July Rider has a document labeled "Schedule A" attached to it. *See:* Stipulation Exhibit E, at 3 (Schedule "A"). This Schedule purports to list cars in the lease that the July Rider purports to take a security interest in. However, the July Rider does not include any language incorporating any schedules, exhibits, or attachments by reference. Moreover, the July Rider does not purport to take a security interest in any items described as security for Loan # 3711 except for the OmniSource Lease. As a result, the July Rider also does not provide an adequate description of the Equipment.

The Assignment Agreement states that "Seller (SIRC) hereby grants to Buyer (Wells Fargo) a first priority security interest in the Equipment," which description is to be "more fully described on the Schedule of Equipment and Agreements annexed hereto and made a part hereof." *See:* Stipulation Exhibit F, at 1 (second unnumbered paragraph). The Description of Agreements and Equipment attached to the Assignment Agreement then describes railcars as "Twenty (20) flat-bottom gondola railcars, each having a capacity of 4,000 cubic feet, bearing reporting marks as more fully described on attached Schedule 'A'." *See:* Stipulation Exhibit F, at 6. However, no Schedule "A" is attached to the Assignment Agreement. *See:* Stipulation Exhibit F. As a result, it would be impossible for any third party to determine which of the Debtor's railcars were to be pledged as security under the Assignment Agreement.

An Amendment of Loan and Security Agreement to Partially Substitute Equipment signed by the parties, but undated, purports to document a substitution of twenty railcars (the "Substitute Railcar Collateral") for twenty other railcars purportedly comprising the original collateral (the "Replaced Railcar Collateral") under the Loan # 3711. *See:* Stipulation Exhibit G, at 1. However, Exhibit 1 (Substitute Equipment) to the Substitution Agreement itemizes only eighteen railcars purporting to comprise the substitute collateral. *See:* Stipulation Exhibit G, at Exhibit 1. Exhibit 2 (Replaced Equipment) to the Substitution Agreement actually does list twenty railcars. *See:* Stipulation Exhibit G, at Exhibit 2. The last attachment to the Substitution Agreement, Schedule A–1, is supposed to be the revised schedule of the Substitute Railcar Collateral. *See:* Stipulation Exhibit G, at Schedule A–1. However, Schedule A–1 appears to be identical to Exhibit 2 to the Substitution Agreement, which is supposed to show the replaced equipment, i.e., the property no longer subject to Loan # 3711. This creates ambiguity as to which railcars are subject to Loan # 3711.

■ This Court must find that Wells Fargo failed to include an adequate description of the Equipment in its security agreement/s because of Well Fargo's failure to include descriptions of the Equipment in Loan # 3711, and the ambiguities contained in the documents amending Loan # 3711. As a result, Wells Fargo could not gain a security interest in the Equipment, and, thus, is not entitled to relief from the automatic stay on that collateral. Only Loan # 3711, the Rental Rider, the July Rider, the Assignment Agreement, and the Substitution Agreement can be reviewed to determine the

scope of Wells Fargo's collateral. The collateral's description cannot be construed based upon reference to the memoranda filed by the parties with the Surface Transportation Board ("STB"), the body with which secured creditors file memoranda to perfect liens regarding railcar and related collateral, for the purpose of perfecting Wells Fargo's purported security interest in the Collateral, by reference to later documents not prepared in conjunction with Loan # 3711, or by reference to any other documents outside of the security agreements. Law interpreting the UCC clearly holds that parol evidence in the form of an additional loan document cannot be used to broaden the reach or cure defects in the collateral description in an otherwise clear security agreement. *See. e.g.: Matter of Martin Grinding & Machine Works, Inc.,* 793 F.2d 592, 595 (7th Cir.1986); *In re Lady Madonna Industries, Inc.,* 99 B.R. 536, 540 (S.D.N.Y. 1989) (citing the lower court decision in *Martin Grinding* to hold the same in a case under New York law). *See also: Matter of Laminated Veneers Co., Inc.,* 471 F.2d 1124, 1125 (2d Cir.1973) (applying the appropriate provision of the New York UCC to find that a security agreement must contain a more detailed collateral description than a financing statement because "the security agreement embodies the intentions of the parties"); *In re Keene Corp.,* 188 B.R. 881, 893 n. 17 (Bankr. S.D.N.Y.1995) (applying Illinois law to find that the standard for a sufficient description in security agreements "is a slightly different and an arguably stricter standard than the standard governing the sufficiency of financing statements").

As a result, Loan # 3711, the Rental Rider, the July Rider, and the Assignment Agreement actually limit the scope of any purported security interest in favor of Wells Fargo to collateral described in those documents. It simply is not possible to identify the Equipment purportedly subject to a security interest in favor of Wells Fargo by reviewing those documents, because of the omission of any schedule of Equipment from Loan # 3711, the ambiguities created by the documents that purport to modify and amend Loan # 3711, and the inadmissibility of parol evidence to prove otherwise. Therefore, because Loan # 3711 does not contain a description of the Equipment sufficient to permit a third party reasonably to identify the Equipment, there is no authenticated security agreement sufficient for a security interest to have attached to the Equipment. *See, e.g.: In re Keene Corp.,* 188 B.R. 881, 901 (Bankr.S.D.N.Y.1995) ("[T]he creditor with a security interest in a carved out portion of like property bears a substantial burden of segregating its collateral from the balance of the debtor's property. Where the lienor is unable to do so, its security interest must fall.") As a result, Wells Fargo does not have a valid security interest in the Equipment and its Motion for Relief from Stay should be denied as to that collateral.

Not only do the omissions, errors, and ambiguities in Wells Fargo's underlying security agreements prevent Wells Fargo from perfecting any security interest in the Equipment, but Wells Fargo's recordation documents also prevent Wells Fargo from asserting a valid security interest in the Equipment. Section 9–308 of the UCC provides that a security interest in personalty only is perfected if it has attached and if all of the UCC's requirements for perfection have been satisfied. *See generally:* U.C.C. § 9–308(a); Ill.Ann.Stat., ch. 810, para. 5/9–308(a)(Smith–Hurd 2002); N.Y. Uniform Commercial Code § 9–308(a)(McKinney 2002). Generally, perfection of a security interest in personalty requires filing of a financing statement in the appropriate

state or county office. *See:* U.C.C. §§ 9–310(a), 9–501(a); Ill.Ann.Stat., ch. 810, para. 5/9–310(a), 501(a); (Smith Hurd 2002); N.Y. Uniform Commercial Code § 9–310(a), 9–501(a)(McKinney 2002). The exception to this rule is when a federal statute preempts the requirements of section 9–310(a) of the UCC regarding the method of perfecting a security interest. *See:* U.C.C. §§ 9–311(1); Ill.Ann.Stat., ch. 810, para. 5/9–311(1); (Smith–Hurd 2002); N.Y. Uniform Commercial Code § 9–311(1)(McKinney 2002). Railcars and railcar leases fall within this exception. A federal statute, 49 U.S.C. § 11301, governs the perfection of security interests in railroad cars and leases thereof. *See:* 49 U.S.C. § 11301. That statute provides, in relevant part, as follows:

> A mortgage (other than a mortgage under chapter 313 of title 46), lease, equipment trust agreement, conditional sales agreement, or other instrument evidencing the mortgage, lease, conditional sale, or bailment of or security interest in vessels, railroad cars, locomotives, or other rolling stock, or accessories used on such railroad cars, locomotives, or other rolling stock (including superstructures and racks), intended for a use related to interstate commerce shall be filed with the [Surface Transportation] Board in order to perfect the security interest that is the subject of such instrument. An assignment of a right or interest under one of those instruments and an amendment to that instrument or assignment including a release, discharge, or satisfaction of any part of it shall also be filed with the Board. The instrument, assignment, or amendment must be in writing, executed by the parties to it, and acknowledged or verified under Board regulations. When filed under this section, that document is notice to, and enforceable against, all persons. A document filed under this section does not have to be filed, deposited, registered, or recorded under another law of the United States, a State (or its political subdivisions), or territory or possession of the United States, related to filing, deposit, registration, or recordation of those documents.

49 U.S.C. § 11301(a). As a result, this federal statute governs the perfection of a creditor's security interest in railcars or a lease of railcars, by requiring a filing of documents evidencing a mortgage, a lien, or a lease in railcars or their proceeds with the Surface Transportation Board. Similarly, federal law dictates the necessary contents of any document to be filed with the STB. *See:* 49 C.F.R. § 1177(2002). The regulations require that any document to be filed with the STB be original, in writing, and executed by the parties to the document, and acknowledged or verified using language required by the STB. *See:* 49 C.F.R. § 1177.3(a)(1–3)(2002). The document also must include a description of the equipment covered by the document, including the types, the classification, the number, and the mark and road number of each railcar. *See:* 49 C.F.R. § 1177.3(d)(5)(2002).

■ As discussed above, Wells Fargo's alleged security interest in the Equipment did not attach. Therefore, the memoranda filed under STB recordation number 21356, *see* Stipulation Exhibit C, and STB recordation number 21356–B, *see* Stipulation Exhibit H, were ineffective to perfect Wells Fargo's security interest in the Equipment. Moreover, even if Wells Fargo's alleged security interest in the Equipment did attach, each of the memoranda regarding the Equipment filed with the STB is defective. The memorandum bearing recording number 21356 refers to "railcars more specifically identified on *Exhibit A* attached hereto and made a part hereof," *see* Stipulation Exhibit C, at 3, but no

Exhibit A is attached to that memorandum. *See:* Stipulation Exhibit C. Instead, a document denominated as "Schedule 1" is attached to the memorandum. *See id.:* at Schedule 1. However, this Schedule is neither identified in nor incorporated into that memorandum. As a result, the document lacks a sufficient description of the railcars as required by 49 C.F.R. § 1177.3(d)(5). Similarly, the memorandum bearing recording number 21356–B, *see* Stipulation Exhibit E, is ineffective because it does not list the same railcars as the Rental Rider, which actually lists no railcars as discussed above. *See also:* Stipulation Exhibit D. As a result of these further errors and omissions in the documents submitted by Wells Fargo to the STB, Wells Fargo does not have a validly perfected security interest in the Equipment. Therefore, Wells Fargo is not entitled to relief from the automatic stay regarding the Equipment.

Wells Fargo's Motion does not address, but simply assumes, that Wells Fargo is entitled to continue to receive payments on the OmniSource Lease post-petition as a result of Wells Fargo's pre-petition exercise of its assignment of that lease via Stipulation Exhibits L, M, and N. *See:* Stipulation Exhibits L, M, and N. This assumption is incorrect. The post-petition payments on the OmniSource Lease comprise SIRC's cash collateral. A pre-petition security interest in proceeds and profits generated by pre-petition property of a bankruptcy estate extends to post-petition proceeds and profits generated by that property. *See:* 11 U.S.C. § 522. It also is clear that such post-petition proceeds and profits can comprise cash collateral of the debtor. *See:* 11 U.S.C. § 363(a). Thus, whether those amounts are cash collateral depends upon whether the underlying property is property of the bankruptcy estate or property of the creditors with attachment and perfection, state law deter-mines the answer to this question. *See: In re Cadwell's Corners Partnership,* 174 B.R. 744, 750 (Bankr.N.D.Ill.1994).

■ Under both Illinois and New York law, a creditor's exercise of an assignment of rents, without foreclosure upon the underlying collateral, fails to divest the debtor of its rights to the rents post-petition. *See: Cadwell's Corners,* 174 B.R. 744, 751–752, 754 (finding the applicable rule in Illinois to be that a debtor retains title to collateral until a foreclosure on the underlying collateral is confirmed and thus that a debtor retains rights in rents upon mere assignment); *In re Constable Plaza Associates, L.P.,* 125 B.R. 98, 102 (Bankr. S.D.N.Y.1991) (applying New York law to find that even if an absolute assignment of rents occurred pre-petition "it would not follow that the debtor's interest in the rent was totally cut off."). Post-petition, the debtor has rights in the underlying collateral and the proceeds of that collateral constitute property of the estate as defined in the Code. *See: Cadwell's,* 174 B.R. at 755 (finding that the plain language of the Code supports this conclusion); *Constable Plaza,* 125 B.R. at 103. *See also, e.g.: In re 5028 Wisconsin Avenue Associates Ltd. Partnership,* 167 B.R. 699, 705–706 (Bankr.D.D.C.1994) (applying similar state law to find that while a lender with a perfected assignment of rents may be payable to the lender pre-petition, the debtor continues to own the rents post-petition, and those rents comprise cash collateral). Under this analysis, the rents generated by the OmniSource Lease constitute property of SIRC's bankruptcy estate, and, thus, comprise cash collateral pursuant to § 363(a) of the Code. As a result, SIRC may use the rents to fund its Chapter 11 case, as long as Wells Fargo's interest in the rents is adequately protected. *Accord: In re Cadwell's Corners Partnership,* 174 B.R. 744, 750 (Bankr.N.D.Ill.1994); *In re*

*Salem Plaza Associates,* 135 B.R. 753, 758 (Bankr.S.D.N.Y.1992).

As discussed above, because Wells Fargo does not have a validly perfected security interest in the Equipment, Wells Fargo is not entitled to relief from the automatic stay on that collateral. Moreover, even if Wells Fargo did have a validly perfected interest in the Equipment and the Omni-Source Lease, Wells Fargo must meet the criteria in § 362(d) of the Code in order to obtain relief from the automatic stay. *See generally:* 11 U.S.C. § 362(d). As a result, Wells Fargo cannot receive relief from the stay unless either its interest in property is not adequately protected or the debtor does not have equity in such property and that property is not necessary to an effective reorganization. *See:* 11 U.S.C. § 362(d)(1 & 2).

■■■ On this issue of adequate protection, it is clear that Wells Fargo is not entitled to any adequate protection in this matter. A creditor only lacks adequate protection of its interest in collateral when it is not compensated for the diminution in the value of that collateral during the pendency of the bankruptcy case. However, Wells Fargo has failed to present and cannot provide evidence showing such diminution.

Wells Fargo's own proof of claim demonstrates that Wells Fargo is not substantially undersecured. That proof of claim alleged a claim in the total amount of $896,600.40 (the "Claim Amount") with collateral securing that claim in the amount of $400,000.00. *See:* Stipulation, ¶ 25, Stipulation Exhibit O, at 1. Wells Fargo's own accounting of the Claim Amount divides the amounts due to Wells Fargo into amounts due under Loan # 3711, *see* Stipulation, ¶ 8, and amounts due under Loan # 3691, *see* Stipulation, ¶ 28. *See also:* Stipulation Exhibit O, at 2. According to that accounting, Loan # 3711 has a dis-

counted balance due, as of the Petition Date, of $346,043.52. *See:* Stipulation Exhibit O, at 2. However, the collateral securing that loan is valued on Well Fargo's proof of claim at $400,000.00. *See:* Stipulation, ¶ 25. As a result, the balance due on Loan # 3711 and the value of the collateral securing the loan approximately are the same.

Moreover, Loan # 3711 and Loan # 3691 are not cross-collateralized. Each loan includes purported form cross-collateralization language. *See:* Stipulation Exhibit B, at 1, ¶ 2, Stipulation Exhibit P, at 1, ¶ 2. However, Loan # 3691 does not include any description of any collateral, let alone the collateral subject to Loan # 3711. *See:* Stipulation Exhibit P. As discussed above, this lack of sufficient description prevents Wells Fargo from enforcing any security interest in collateral taken under Loan # 3711, based upon SIRC's obligations under Loan # 3691.

Further, it appears that Wells Fargo never filed any document with the STB in the same recordation series as Loan # 3691 that claimed a security interest in the collateral purportedly subject to Loan # 3711. Similarly, it appears that Wells Fargo never filed any document with the STB in the same recordation series as Loan # 3711 that claimed a security interest in the collateral purportedly subject to Loan # 3691. Therefore, Wells Fargo has no perfected cross-collateralized interest applying to both Loan # 3711 and Loan # 3691.

Further, Wells Fargo does not have a valid financing statement on file with regard to any collateral subject to Loan # 3691 under any cross-collateralization: Wells Fargo released its security interest in all collateral held under Loan # 3691 on or about March 8, 2002, via an STB filing bearing recordation number 21323–I. *See:*

Stipulation Exhibit Q. As a result of this release, Wells Fargo has no right to any of the Collateral, except as taken in Loan # 3711 to secure the balance due under Loan # 3711. Had Wells Fargo intended to retain a security interest to secure amounts due under Loan # 3691, then it should not have filed a release that provides that Wells Fargo released its lien on the collateral held under Loan # 3691.

The balance due under Loan # 3711, Well Fargo's only secured note, and the value of the collateral securing that note are approximately the same. Therefore, Wells Fargo is adequately protected in this matter as to Loan # 3711, the loan as to which it seeks relief from the automatic stay. Moreover, Wells Fargo has presented no evidence to show that its collateral is decreasing in value in this matter.

■ The Code clearly provides that a debtor may use cash collateral where there is creditor consent or court authorization. *See:* 11 U.S.C. § 363(c)(2). To that end, SIRC sought and obtained approval of multiple cash collateral orders in this case, which orders permit SIRC to receive and use cash collateral in the ordinary course of its business. Wells Fargo received notice of the hearings on these orders and actually was served with these orders, including the Final Order Authorizing Use of Property Subject to Security Interests and Cash Collateral. Nonetheless, Wells Fargo filed no objection to any of the cash collateral orders, and, in fact, did not participate in the negotiations or hearings thereon after the initial cash collateral hearings. It is inequitable for Wells Fargo to assert that it is not adequately protected in this case when its lack of adequate protection results from its declination to participate actively in this case.

■ Regarding the second test of § 362(d) of the Code, it is unclear whether the Debtor has equity in the Collateral, but it is clear that the Collateral is necessary to the Debtor's reorganization. *See:* 11 U.S.C. § 362(d)(2). On the equity issue, Wells Fargo is required to prove whether the Debtor has equity in the property for which relief is sought. *See:* 11 U.S.C. § 362(g). The evidence before the Court, as discussed above, shows that the balance due under Loan # 3711 and the value of the collateral purportedly securing that loan are approximately equal. While it cannot conclusively be said that SIRC has equity in that Collateral, it cannot conclusively, let alone by a preponderance of the evidence, be shown that SIRC does not have equity in the Collateral. Therefore, because § 362(d)(2) of the Code is conjunctive, Wells Fargo is not entitled to relief under that Code provision. The Equipment and the OmniSource Lease are necessary to the Debtor's Chapter 11 case both pre– and post-confirmation. The Equipment comprises so-called "Fifty Year Cars," which cars will have substantial useful lives even after the expiration of the OmniSource Lease, and, thus, will be available to generate additional revenue for SIRC's business operations. Moreover, the OmniSource Lease generates payments of $7,700 per month for an annual total in excess of $92,000. Pre-confirmation, these amounts will permit SIRC to improve its cash flow and to better fund its operations. Post-confirmation, these amounts will comprise a portion of the funds available to fund the payments to creditors under a plan of reorganization. As a result, these payments are necessary to the continued success of the debtor throughout the reorganization process.

■ Finally, the Court notes that the Debtor has argued that sanctions should be entered against Wells Fargo for its attempts to collect post-petition rents due on the OmniSource Lease. In considering

this argument, the Court finds that there is no prayer for such relief in any of the Debtor's pleadings, and, even if there was such a prayer, the Court does not find that a willful violation of the automatic stay has occurred as is required under 11 U.S.C. § 362(b). Any violation is merely technical, and, as such, is not sanctionable.