In re the **MEWS ASSOCIATES, L.P., Debtor.**

**Bankruptcy No. 92–40592–3–11.**

United States Bankruptcy Court, W.D. Missouri.

Sept. 17, 1992.

Bruce E. Strauss, Merrick, Baker, Fox, Hufft & Strauss, Kansas City, Mo., for debtor.

Max Jevinsky, Berman, DeLeve, Kuchan & Chapman, Kansas City, Mo., for creditor.

## MEMORANDUM OPINION

ARTHUR B. FEDERMAN, Bankruptcy Judge.

Royal Neighbors of America ("RNA") has filed a Motion for Relief from the Automatic Stay. This is a core proceeding under 28 U.S.C. § 157(b)(2)(a), over which this Court has jurisdiction pursuant to 28 U.S.C. § 1334.

In its motion RNA contends that rents collected by the debtor are not cash collateral, and are in fact property of RNA. The deed of trust contains a typical assignment of rents provision. Prior to the filing of the case RNA declared a default, accelerated its debt, noticed up a foreclosure and notified some—but not all—of the tenants that they should begin making rental payments to RNA. The mortgage holder did not physically take possession of the premises, and did not request the appointment

of a receiver under Missouri law. The notice sent to the tenants specifically stated that the debtor remained responsible for providing all services to such tenants.

The Chapter 11 Petition was filed on February 24, 1992, immediately after RNA began notifying tenants to pay rents to it; no rent was in fact collected by RNA prior to the filing of the Chapter 11 case. One week later, on March 3, 1992, RNA filed a motion to restrict use of cash collateral, combined with its notice pursuant to Section 546(b) of the Bankruptcy Code. 11 U.S.C. § 546.

RNA contends that the steps taken by it pre-petition gave it absolute right to all rents collected thereafter, despite the bankruptcy proceeding. Therefore, it contends, since the debtor does not have access to the rents, but must pay the expenses of operating the apartment complex, this Chapter 11 case is doomed, and RNA should be allowed to foreclose. *In re Northwest Commons,* 136 B.R. 215 (Bankr.E.D.Mo.1991). Since I reject that reasoning, the motion for relief was denied in open Court at the conclusion of the hearing. This Memorandum is intended to lend my support to Chief Judge Koger's opinion in *In re Stoneridge Apartments,* 119 B.R. 706 (Bkrtcy. W.D.Mo.1990), and to apply that case to the slightly different facts present here. *Compare In re Challenge Air Intern, Inc.,* 123 B.R. 661 (D.S.D.Fla.1991); and *In re Anaheim Electric Motor, Inc.,* 137 B.R. 791 (Bankr.C.D.Cal.1992); *with In re Northwest Commons, Inc.,* 136 B.R. 215 (Bankr. E.D.Mo.1991); and *In re Professional Technical Services,* 71 B.R. 946, 949 (Bankr.E.D.Mo.1987).

The primary issue in this case is which party, the debtor or RNA, or both, has rights in the rents. If both parties do, the rents are cash collateral; in that event the debtor may use the rents to pay operating expenses, provided the ongoing rights of RNA are adequately protected. If, however, RNA owns the rents lock, stock, and

barrel, then the debtor has no funds with which to pay its expenses, and its Chapter 11 will surely fail.

The documents executed by debtor in favor of RNA contain several clauses dealing with the assignment of rents. The document entitled *Assignment of Leases and Rentals* reads in pertinent part:

The Mews Association, ... hereby assigns to Assignee all rents, income, profits and issues arising from the property commonly known as The Mews Apartments....

[U]nto Assignee and its successors or assigns forever *as additional collateral security* for the payment of the principal sum and interest and all other sums with interest thereon provided to be paid in a certain note.... It is expressly understood and agreed that unless and until Assignor, or others liable therefor, default in the performance of any of the terms or covenants contained in said Note or Deed of Trust or accompanying documents, or this Assignment, Assignor shall have the right to collect and retain the rents, income, profits and issues. [emphasis supplied] [1]

■ Under Missouri law, an Assignment of Rents clause lies dormant until certain steps are taken to activate, or perfect, such assignment. Only after such steps have been taken may the mortgagee collect rents directly from tenants. These steps were identified in *Stoneridge,* as follows:

1. Proper documentation of the assignments;

2. Proper recording of the assignments in the form required for an interest in real estate;

3. Default on the part of the assignor; and

4. Possession of the premises by the assignee; or

---

1. Section 1.15 of the *Deed of Trust and Security Agreement* states:

That the income, rents and profits and rental value of the Mortgaged Property and any and all present or future leases and rental and

occupancy agreements are hereby pledged and assigned to Lender as additional security for the payment of the indebtedness secured hereby....

5. Action equivalent to possession by the assignee.

119 B.R. at 707.

These requirements are well-founded. In effect, they require that in order to collect rents, a mortgagee either must exercise a valid right to take possession of the premises, or must take some equivalent action, such as appointment of a receiver. In either event, as noted by one District Court, the tenants of the debtor will be paying rent to an entity which is in possession of the premises and is responsible to use those rents to provide ongoing maintenance and services. *In re 1301 Connecticut Avenue Associates,* 126 B.R. 1, 3 (D.D.C.1991). *See, In re Prichard Plaza Associates, Ltd. Partnership,* 84 B.R. 289, 298 (Bankr.D.Mass.1988) ("Equitable considerations hardly support ... proprietorial serfdom.").

Until the steps listed in *Stoneridge* are taken, the mortgagee, despite having a validly recorded assignment of rents, does not have the right to collect the rents. Thus, if prior to the steps having been taken, an unsecured creditor were to obtain a judgment and garnish the rents due the debtor, that unsecured creditor would have a prior claim to the rents generated up to that point.[2] However, if the mortgagee thereafter perfected its assignment by taking the identified steps, the mortgagee would have the first lien to rents generated after the date on which its assignment was so activated. The same would be true if the mortgage perfected its assignment of rents after the bankruptcy petition had been filed, by filing a notice as allowed by § 546(b) of the Code.[3]

In the event a mortgagee perfects its assignment of rents after the filing of the petition, as provided by § 546(b), the rents become cash collateral. That term is defined in § 363(a) of the Code to mean

> cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, rents, or profits, of property subject to a security interest as provided in § 552(b) of this title, whether it be before or after the commencement of the case under this title.

11 U.S.C. § 363. If the rents collected after the post-petition perfection by the mortgagee of its assignment are cash collateral, then the mortgagee is entitled to adequate protection. That was essentially the case in *Stoneridge,* where counsel to the mortgagee was in the chambers of the state court judge, attempting to have a receiver appointed, at the time the Chapter 11 case was filed. The mortgagee thereafter filed its notice pursuant to § 546(b), and all rents collected in the case were treated as cash collateral. 119 B.R. at 707.

But what if, as RNA contends here, the *Stoneridge* steps have all been taken prior to the filing of the petition? In other words, if in *Stoneridge* the creditor had actually succeeded in getting the receiver appointed prior to the filing of the bankruptcy petition, would the creditor have had sole right to all rents generated thereafter? Either the rents become cash collateral in which both parties have an interest, as the debtor maintains here, or the creditor's action in taking possession of the rents pre-petition cuts off all rights of the debtor to those rents.

**2.** *See, e.g., Wenneker v. Physicians Multispecialty Group, Inc.* 814 S.W.2d 294 (Mo banc 1991); *Vittert Construction and Investment Co. v. Wall Covering Contractors, Inc.,* 473 S.W.2d 799 (Mo. Ct.App.1971).

**3.** Section 546(b) of the Code reads as follows:
(b) The rights and powers of a trustee under sections 544, 545, and 549 of this title are subject to any generally applicable law that permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of such perfection. If such law requires seizure of such property or commencement of an action to accomplish such perfection, and such property has not been seized or such action has not been commenced before the date of the filing of the petition, such interest in such property shall be perfected by notice within the time fixed by such law for such seizure or commencement.

11 U.S.C. § 546.

■ Preliminarily, I find that the actions of RNA in noticing a foreclosure and notifying some tenants to pay rent to it do not rise to the level of taking possession of the premises, or equivalent action as required by Missouri law. *In re Stoneridge,* at 707; *In re Stuckenberg,* 374 F.Supp. 15 (E.D.Mo.1974).[4]

■ Next, I find that the rents due and owing to the debtor are property of the estate, and that perfection of an assignment of rents places the mortgagee in the position of a secured creditor as to those rents, and not the owner. Since those rents are property of the estate, the automatic stay of § 362 is applicable, and the secured creditor is required to turn over to the debtor any rents still in its possession.

■ Section 541(a)(1) of the Code defines "property of the estate" to include "all legal or equitable interest of the debtor in property as of the commencement of the case". 11 U.S.C. § 541. The Supreme Court has held that "Section 541(a)(1)'s scope is broad". *United States v. Whiting Pools, Inc.,* 462 U.S. 198, 205, 103 S.Ct. 2309, 2313, 76 L.Ed.2d 515 (1983) (property on which the Internal Revenue Service had levied pre-petition was required to be returned to the debtor, and the secured creditor was entitled to adequate protection of its interest in such collateral). As of the commencement of the case, the debtor here held certain leasehold interests as lessor with the various tenants. The debtor was still the lessor under the leases, even though RNA had given notice to some of the tenants to make payments to RNA. Therefore, the leasehold interests were still the property of the debtor as of the commencement of the case, and were not property of RNA. Instead, RNA held a security interest in the rents, which security interest had arguably been perfected, or activated, by the pre-petition actions taken by RNA. Such perfection of an assignment of rents does not cut off all rights whatsoever that the debtor may have in the rents received thereafter. In *In re Constable Pla-*

*za Associates, L.P.,* 125 B.R. 98 (Bkrtcy. S.D.N.Y.1991), in a situation similar to this, the Court stated,

> In accordance with *United States v. Whiting Pools, Inc.* [citation omitted], the concept of property of the estate is to be given a broad application. Manifestly, Mutual [the mortgage holder] did not cut off all of the debtor's property right with respect to the rents; Mutual received an assignment of the rents as security for the mortgage debt, so that when the mortgage debt was satisfied, the debtor's right to receive the rents resumed. Obviously, Mutual does not claim an absolute right to collect rents indefinitely, even after such time as the debtor might have satisfied the mortgage debt.

125 B.R. at 101. I find that the debtor does retain some interest in the rents, subject to the perfected security interest of a mortgagee which perfects its assignment of rents either before or after the filing of the petition. Since both the debtor and the secured creditor have an interest in the rents, such rents are cash collateral within the meaning of § 363(a) of the Code. In this case, as noted, no rents were actually collected by RNA prior to the filing of the bankruptcy petition. As shown, all rents collected post-petition are an asset of the bankruptcy estate. Therefore, as to such rents, the automatic stay of Code § 362 prohibits any action by RNA to collect such rents. Section 362 states that the filing of a petition operates as a stay of

(1) [T]he *continuation* ... of process ... or other action ... against the debtor ... to recover a claim against the debtor that arose before the commencement of the case under this title;

.    .    .    .    .

(3) any act to obtain possession of property of the estate or property from the estate *or to exercise control over the property of the estate* (emphasis added);

---

**4.** In *Stuckenberg,* the mortgagee notified the tenants that it was taking possession of the premises, took possession through the manager,

collected rent, reimbursed tenants for repairs, made other repairs and rented units on its own account.

(4) any act to ... enforce any lien against property of the estate....

.   .   .   .   .

(6) any act to collect, assess or recover a claim against the debtor that arose before the commencement of the case under this title.

11 U.S.C. § 362.

RNA's position that it should be allowed to seize the collateral that secures the debt owed to it simply because it began the process to do so before the commencement of the case is contrary to the automatic stay provisions of the Code. The rents that RNA calls its own were not yet due as of the date of the bankruptcy and, therefore, RNA had not yet realized on its collection efforts when the automatic stay was imposed. The effect of the stay is to prevent RNA's seizure of debtor's property for satisfaction of pre-petition indebtedness. Of course, as stated previously, § 546(b) of the Code in effect provides an exception to the automatic stay to enable a creditor such as RNA to complete perfection of its assignment of rents if such perfection was not completed pre-petition. Once again, such perfection does not give the creditor the right to seize such rents, but simply to be treated as a secured creditor with respect to such rents.

RNA's position is also contrary to the turnover provisions of the Code. In the event the mortgage holder had in fact collected rents pre-petition, and was holding such rents at the time the petition was filed, such rents would be property of the estate subject to turnover to the debtor. 11 U.S.C. § 542(a) and 543(a). *United States v. Whiting Pools, Inc.,* 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983); *In re Constable Associates, L.P.,* 125 B.R. 98 (Bankr.S.D.N.Y.1991). Since the Code requires that even pre-petition rent collected by a mortgagee be turned over to a debtor, RNA is hard-pressed to argue that post-

petition rental income is not an asset of the estate.[5]

The Bankruptcy Code discourages the proverbial race to the courthouse. As such, the issue of whether or not a Chapter 11 fails should not be determined by whether a mortgagee happens to get a receiver appointed a moment before, or a moment after, the bankruptcy petition is filed. Instead, the rents collected by a debtor post-petition are an asset of its estate. The mortgagee becomes entitled to adequate protection of its interest in those rents by perfecting its assignment, either before or after the bankruptcy is filed. Therefore, the viability of Chapter 11 cases can be decided on their merits, not on which party got to the courthouse first.

For these reasons, the motion for relief from the automatic stay has been denied.

---

**5.** It should be noted that the same holding might not result as to rents which were both collected an applied to the obligation pre-petition. Once applied to reduce indebtedness, such rents might no longer be property of the estate. That would not, however, preclude an attempt by the debtor to recover such rents under § 547 or 548 of the Bankruptcy Code as preferential or fraudulent transfers.