In re SOUTH POINTE ASSOCIATES, A Missouri Limited Partnership, a/k/a South Pointe Apartments, Debtor.

Bankruptcy No. 93–45304–172.

United States Bankruptcy Court, E.D. Missouri, E.D.

Nov. 10, 1993.

Richard G. Byrd, St. Louis, MO, for debtor-in-possession.

Carl J. Spector, Matthew R. Niemann, St. Louis, MO, for Welsh–Kals Limited Partnership, Bryan, Cave, McPheeters & McRoberts.

### ORDER

JAMES J. BARTA, Bankruptcy Judge.

The matter being considered here is the "Emergency Motion For Summary Judgment and Objection to Motion to Use Cash Collateral", filed on behalf of Welsh–Kals Limited Partnership ("Movant"). These determinations and this Order are based on a consideration of the record as a whole, including the memoranda submitted by Counsel for the Movant and Counsel for South Pointe Associates ("Debtor"), and the testimony and argument presented at the hearings in this case.

This is a core proceeding pursuant to Section 157(b)(2)(M) of Title 28 of the United States Code. The Court has jurisdiction over the parties and this matter pursuant to 28 U.S.C. §§ 151, 157 and 1334, and Rule 29 of the Local Rules of the United States District Court for the Eastern District of Missouri.

The Debtor, a Missouri Limited Partnership, filed a voluntary Petition for Relief under Chapter 11 of Title 11 of the United States Code on October 12, 1993. The Debtor has been granted additional time to file Schedules and Statements of Affairs based upon its description of the complexity of its business operations.

The Debtor owns a 192 unit apartment complex in St. Louis County that is approximately seven years old. The Movant is the assignee of certain notes, deeds of trust, assignments and other agreements executed by the Debtor. The Movant has alleged that the Debtor has failed to make payments under these obligations since March 5, 1993, and is therefore in default.

On October 12, 1993, the date of the commencement of this case, the Debtor also filed a series of motions including, "Debtor's Motion For Use of Cash Collateral and to Limit Notice." As part of its response to the cash collateral motion, the Movant here filed this emergency motion for summary judgment. At an expedited hearing on October 18, 1993, and in its pleadings, the Debtor argued that the rents from the apartment complex are cash collateral pursuant to 11 U.S.C. § 363(a), and that the use of this cash collateral is necessary "to maintain the rental income of the property and to pay interest payments to the secured creditor and to maintain the integrity and value of the real property of the estate." *Debtor's Motion for Use of Cash Collateral and To Limit Notice,* filed October 12, 1993, document number 9, page 1. The Movant argued that prior to the commencement of this case, it had foreclosed upon the apartment rents and, therefore, the rents are not property of the bankruptcy estate. Approximately two weeks before the Debtor filed its Petition, the Movant had taken certain actions which, the Movant has argued, activated its rights to collect the rents. If the rents are not property of the estate, they are not cash collateral that would otherwise be available for the Debtor's use in this case.

Pursuant to certain documents of assignment dated August 26, 1993, and August 30, 1993, the Resolution Trust Corporation ("RTC") as Conservator for Franklin Savings Association ("Franklin") assigned all right, title and interest in the loan documents and security agreements to this Movant. The Movant thereafter filed Uniform Commercial Code Financing Statements to perfect its security interest in the Debtor's property.

On about September 27, 1993, the Movant revoked the Debtor's license to collect the

rents. The Movant also sent a letter to each tenant at the apartment complex, instructing them to forward all rents to the Movant rather than to the Debtor.

Prior to the commencement of this case, the Movant collected rents from several tenants.

Summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c), as made applicable by Rule 7056 of the Federal Rules of Bankruptcy Procedure ("FRBP").

■ The issue of whether the post-petition rents constitute cash collateral involves a consideration of the parties' claims to the rents. Generally, property interests are defined by state law. *Butner v. U.S.,* 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). Therefore, in this case the Court must look to the law of Missouri to determine the extent of the parties' interests in the rents.

■ The law in Missouri and in this District is clear in that an assignee-mortgagee is permitted to: (i) collect rents upon a mortgagor's default in payment of the mortgage debt, and (ii) to apply these rents to the reduction of the mortgage debt. *In re Northwest Commons, Inc.,* 136 B.R. 215, 219 (Bankr.E.D.Mo.1991). However, to activate its right to collect the rents, the mortgagee must enter into actual possession of the property or take some equivalent action. *Id. See Grafeman Dairy Co. v. Mercantile Club, Mo.,* 241 S.W. 923, 927 (Mo.1922) (en banc); *Netzeband v. Knickmeyer–Fleer Realty & Inv. Co.,* 103 S.W.2d 520, 522 (Mo.Ct.App. 1937); *In re Stuckenberg,* 374 F.Supp. 15, 17 (E.D.Mo.1974). *Pine Lawn Bank and Trust Cp. v. M.H. & H., Inc.,* 607 S.W.2d 696, 700 (Mo.Ct.App.1980). In Missouri,[1] an assignment of rents agreement or clause does not by itself effect an absolute conveyance of rents to the assignee; something more must occur before the assignee activates the right to receive the rents.

Missouri law enumerates four requirements an assignee must meet before it may collect rents under an assignment of rents clause:

1. Proper documentation of the assignments;
2. Proper recording of the assignment in the form required for an interest in real estate;
3. Default on the part of the assignor/debtor; and
4. Possession of the premises by the assignee; or action equivalent to possession by the assignee. *In re Northwest Commons, Inc.,* 136 B.R. at 218; *In re Stoneridge Apts.,* 119 B.R. 706, 707 (Bankr. W.D.Mo.1990).

■ The Movant has established its interest in the Debtor's prepetition property and in the apartment rents, through a series of recorded instruments including the "Assignment of Mortgage Loans" dated April 26, 1993 (Movant's Exhibit C–11), and various underlying documents (Movant's Exhibits C–1 through C–11). The Court has determined that Movant has provided adequate and proper documentation to satisfy the first requirement. By means of the same documents, the Movant has established that it has properly recorded the assignments in the form required by Missouri law for an interest in real estate, in satisfaction of the second requirement.

The third element requires the creditor to prove that the indebtedness is in default. On March 5, 1993, Counsel for the Resolution Trust Corporation, as Conservator for Franklin Federal Savings Association, mailed to the Debtor and to its General Partner, a summary of monthly billings that included missed payments and late charges. The summary was an attachment to a letter that demanded full payment of the past due sums not later than March 15, 1993. *Plaintiff's Exhibit No. C–12.* On August 26, 1993, on August 30, 1993, on September 23, 1993, and on October 5, 1993, the Movant sent letters and supporting documents to the Debtor, to its General Partner, and to its then Counsel,

**1.** Missouri is a "lien theory" state, as contrasted with those states which recognize an automatic transfer of an absolute assignment of rents upon the occurrence of a specific condition. See discussion at *Matter of Village Properties, Ltd.,* 723 F.2d 441, 443 (5th Cir.1984).

advising of the default and demanding payment of the indebtedness. *Movant's Exhibits C–13, C–14, C–15 and C–16.*

The Debtor has argued that the notes and obligations are not in default. On November 3, 1993, in support of this argument, the Debtor submitted the affidavit of its General Partner, Bill Bruce. The affidavit contains hearsay statements, and refers to Affiant's legal conclusions and personal interpretations of certain prepetition actions by the RTC as Conservator for Franklin. The Debtor's contention that the obligations are not in default because other accounts were available to satisfy payments as they became due or if they were not made by the Debtor, is not supported by this record. The Movant has established that the indebtedness was in default as a result of Debtor's failure to make payments.

In the present case a major disagreement between these parties involves the fourth requirement that the assignee must take possession or some action equivalent to possession before it may enjoy the exclusive right to collect and retain rents. Welsh–Kals argues that on September 27, 1993, prior to the commencement of this case, it satisfied this requirement by revoking the debtor's license to collect rents, and by sending a notice to all residents at the premises instructing them to forward all future rents to Welsh–Kals. *Movant's Exhibit C–17.* Under Missouri law, "the giving of notice by a mortgagee that it is activating its rights under an assignment of rents clause is 'action equivalent to taking possession'." *In re Northwest Commons, Inc.,* 136 B.R. at 218.

Therefore, the Court has concluded that prior to the commencement of this case, Welsh–Kals took all action necessary under Missouri law to activate its right to collect rents under the assignment of rents agreements.

■ The Debtor has argued that even if the Movant had taken some equivalent action to activate its right to collect rents, it retained at least a minimum residual interest in the rental income as of the commencement of this case. In support of this position, the Debtor has argued that the loan documents provide that the assignment of rents is to terminate upon payment of the underlying debt; and that the loan documents do not describe the assignment of rents as being an absolute assignment. Consistent with the broad scope of 11 U.S.C. § 541, the Court has determined that the property of this estate includes the Debtor's interest in the right to collect rents that arises under the assignment agreements after the debt to the Movant as assignee has been fully paid. This interest is not unlike a debtor's interest in the right to receive the "excess" value of collateral after all secured debt has been satisfied. If no other creditor asserts a security interest in the Debtor's right to receive rents after the Movant's debt has been paid, the Debtor's interest in this right is property of the estate that is not cash collateral pursuant to 11 U.S.C. § 363. As a practical matter however, the Debtor has no right to the immediate collection of the apartment rents, and in the circumstances presented here, its residual interest in the rents is of no value in this reorganization case.

The cases cited by the Debtor in support of its argument concerning rents as cash collateral are based on law other than the law of the State of Missouri and are not necessarily controlling in the circumstances presented here. *In the Matter of Gorrow Development Corporation,* 135 B.R. 427 (Bankr.M.D.Fla.1991) (concerning a Florida State Court Order); *In re Salem Plaza Associates,* 135 B.R. 753 (Bankr.S.D.N.Y.1992) (absolute assignment of rents upon default not enforceable under North Dakota law during redemption period); *In re Bethesda Air Rights Ltd. Partnership,* 117 B.R. 202, 209 (Bankr.D.Md.1990) ("Because they are treated as security under [Maryland] state law, rents collected post-petition are cash collateral which Debtor may use if it provides adequate protection to Lender."); *In re Constable Plaza Associates, L.P.,* 125 B.R. 98 (Bankr.S.D.N.Y.1991) (under New York law, prepetition appointment of state court receiver did not cut off all of debtor's property interest in future rents).

Similarly, the Missouri cases cited by the Debtor in support of the argument that rents are cash collateral involve fact situations that are materially different from the facts in this

228

case. *In re Stoneridge Apartments,* 119 B.R. 706 (Bankr.W.D.Mo.1990) (prepetition, the creditor had done everything *short* of taking possession of the property); *In re Greenway Manor Partnership,* Case No. 92–44953–293 (Bankr.E.D.Mo.1992) (debtor's interest in rents was based on a prepetition order which appointed a state court Receiver and described the debtor's property interests); *In re Centre of Missouri Ltd.,* 116 B.R. 138 (Bankr.E.D.Mo.1990) (postpetition, the creditor took "some equivalent action tantamount to possession"); *In re Mews Associates, L.P.,* 144 B.R. 867 (Bankr.W.D.Mo.1992) (notice to pay rents given to some, but not all tenants; debtor remained responsible for providing services to tenants; no rent in fact collected by creditor).

The Debtor's additional argument that the Movant has entered this proceeding with unclean hands based on an alleged breach of a prepetition agreement is in the nature of a collateral attack on the extent of the Movant's title, and does not present a legal challenge to the Movant's motion for summary judgment.

The parties have suggested that further proceedings in this case will be greatly affected by the Court's determination of whether or not the apartment rents are cash collateral. Therefore, the Court's determinations that the rents are not cash collateral as set out herein were announced to Counsel for the Debtor and Counsel for the Movant during a telephone conference call on October 27, 1993.

**IT IS ORDERED** that this matter is concluded; and that the emergency motion of Welsh–Kals Limited Partnership for summary judgment is granted, and the objection to the Debtor's use of cash collateral is sustained; and

That the prepetition rents that became due after September 27, 1993, and all postpetition rents are the property of Welsh–Kals Limited Partnership and are not property of this Chapter 11 Bankruptcy estate; and that the Debtor's motion to determine that the apartment rents are cash collateral, and to use the rents for postpetition operating and other expenses is denied; and that all other requests in this matter are denied.