In re SOUTH PLAZA VENTURES,
Debtor.

Bankruptcy No. 92–47282–172.
Motion No. 114.

United States Bankruptcy Court,
E.D. Missouri,
Eastern Division.

May 26, 1994.

David A. Warfield, St. Louis, MO, for debtor-in-possession.

Mark V. Bossi, St. Louis, MO, for creditors' Committee.

David L. Going, St. Louis, MO, for Rio Grande Properties II, L.P.

## ORDER

JAMES J. BARTA, Bankruptcy Judge.

At Saint Louis, in this District, this 26th day of May, 1994.

The matter before the Court is the "Motion to Confirm or, in the alternative, to Compel Abandonment" ("Motion"), filed on behalf of Rio Grande Properties II, L.P., a Delaware Limited Partnership ("Rio Grande"). These determinations and this Order are based on a consideration of the record as a whole, including the memoranda submitted by Counsel for Rio Grande and Counsel for the trustee, Charles W. Riske ("Trustee").

This is a core proceeding pursuant to Section 157(b)(2)(A) and (O) of Title 28 of the United States Code. The Court has jurisdiction over the parties and this matter pursuant to 28 U.S.C. §§ 151, 157 and 1334, and Rule 29 of the Local Rules of the United States District Court for the Eastern District of Missouri.

South Plaza Ventures, a Missouri general partnership ("Debtor"), filed a Voluntary Petition for Relief under Chapter 11 of Title 11 of the United States Code on October 28, 1992 ("Petition Date"). The Debtor is the former owner of land and improvements thereon, including a shopping center and an office building, located in St. Louis County, Missouri, and commonly known as the Sunset Plaza Shopping Center ("Real Property").

Rio Grande, by a postpetition assignment from New West Savings & Loan Association ("New West"), is the owner and holder of a certain Note from the Debtor Secured by a Deed of Trust, dated September 5, 1985, as amended and restated on December 31, 1986, ("Amended Note") in the principal amount of $19,400,000.00. The Debtor's obligations under the Amended Note were initially secured pursuant to the following: (i) a valid, legally enforceable, duly recorded and perfected Deed of Trust and Security Agreement ("Deed of Trust"), and (ii) a valid, legally enforceable, duly recorded and perfected Collateral Assignment of Lessor's Interest in Leases and Rents ("Assignment").

Through and as of the Petition Date, the outstanding aggregate principal balance due under the Amended Note was $18,173,796.21. Accrued but unpaid interest under the Amended Note equalled $108,046.96, resulting in a total indebtedness under the Amended Note of $18,281,843.17 as of the Petition Date. Real estate taxes of over $400,000.00 on the real estate remained unpaid as of the Petition Date, and 1992 real estate taxes became delinquent on January 1, 1993.

Prior to the Petition Date, New West had not obtained an order appointing a receiver nor made demand upon, or served notice on, the tenants on the Real Property for the collection of rents. However, on November 2, 1992, five days after the commencement of this case, New West filed a "Demand in Lieu of Seizure or Commencement of an Action

Pursuant to 11 U.S.C. § 546(b)" with the Bankruptcy Court.

### The Cash Collateral Order

In this bankruptcy proceeding and after notice to creditors, the Court entered a Stipulated Final Order Concerning Use of Cash Collateral Pursuant to Section 363 and Granting Adequate Protection ("Cash Collateral Order"). The Cash Collateral Order granted New West, retroactive to the Petition Date, valid, enforceable and perfected replacement liens on, or replacement security interests in and upon, all property of the bankruptcy estate and of the Debtor, including but not limited to all real property, fixtures and personal property of every kind and nature whatsoever, including but not limited to rents, proceeds, profits, accounts, inventory, general intangibles, contract rights and products of such property. *See* Cash Collateral Order, ¶ (N)(1), pp. 17–18, dated January 12, 1993.

### Relief from the Automatic Stay

On about March 25, 1993 New West filed its Motion for Relief from or Modification of the Automatic Stay, seeking a judgment vacating or modifying the automatic stay to permit New West to foreclose its security interest in its collateral, including the Real Property and Personal Property. By its Order of June 18, 1993, the Court granted New West relief from the automatic stay to permit it to foreclose its interests in the Debtor's property. The Court also granted New West's request to terminate the automatic stay and ordered the estate's interest in such property abandoned. On February 17, 1994 the Court granted in part Rio Grande's motion to confirm that the estate interest in certain personal property had been abandoned by the Order of June 18, 1993. By agreement of the parties, the issues with respect to the TIF deposit, the rents receivable and a Taco Bell deposit were submitted to the Court on the pleadings. This Order addresses those deferred issues.[1] Pursuant to its rights under the Deed of Trust, Rio Grande, as the postpetition assignee of New West, foreclosed on its security interests in

the Real Property on November 4, 1993. Notwithstanding the foreclosure, the Amended Note was not fully satisfied thereby. Rio Grande filed a Proof of Claim in this bankruptcy proceeding in the amount of $11,281,-840.17, which is the difference between the indebtedness owing on the Petition Date and the amount representing the successful bid at the foreclosure sale.

### The Dress Barn Litigation

Dress Barn, Inc. ("Dress Barn") rented retail space at the Real Property from the Debtor under a multiyear lease with a term commencing in September of 1987 and ending on June 30, 1993. Pursuant to the lease, Dress Barn was allowed to terminate the lease before June 30, 1993 if, upon the meeting of certain conditions, it gave the Debtor written notice of its intention to vacate no later than March 20, 1989. By a letter dated April 19, 1989, Dress Barn notified the Debtor of its desire to terminate the lease. The Debtor rejected this notice as untimely and improper. Dress Barn remained in the leased premises and paid rent until June of 1990, at which time it vacated and stopped paying rent and other charges under the lease.

Prior to the Petition Date, the Debtor initiated a lawsuit against Dress Barn in the District Court for the Eastern District of Missouri seeking unpaid rent, interest and attorney's fees. The District Court held in favor of the Debtor on the issue of liability, but ordered that the Debtor take nothing because the Debtor had sued for the full remaining value of the lease and had offered no evidence to support a recovery based on anticipatory repudiation. On appeal, the United States Court of Appeals for the Eighth Circuit affirmed the District Court's judgment in favor of the Debtor on Dress Barn's liability for breach of the lease, reversed the District Court's order that Debtor take nothing and remanded to the District Court with instructions to award the Debtor back rent and interest to the date of judg-

---

1. By agreement, the Taco Bell issues were resolved prior to the matter being submitted to the Court.

ment and attorney's fees.[2] The matter is currently on remand, and no judgment has been entered by the District Court on the issue of damages, and the Debtor has received no payments from Dress Barn since it vacated the premises in June of 1990.

### The City of Sunset Hills TIF Deposit

In an effort to implement a redevelopment plan, the Debtor and the City of Sunset Hills ("City") entered into an agreement whereby the Debtor placed $30,000.00 on deposit with the City. The City and the Debtor designated this account a tax increment allocation redevelopment fund ("TIF"). To cover its costs and expenses, and by agreement, the City has occasionally drawn upon the deposited funds. Pursuant to this Court's Order of January 25, 1994, the City drew against the funds on deposit and remitted the balance in the amount of $13,895.44 to the Trustee.

### Issues

By stipulation, the parties have submitted the matter to the Court upon two issues:

(1) If Rio Grande holds a claim to accrued rents, whether paid or unpaid, is this claim superior to the claim of the Chapter 7 Trustee?

(2) If Rio Grande holds a claim to the TIF funds that were deposited with the City of Sunset Hills prior to the Petition Date, is this claim superior to the claim of the Chapter 7 Trustee?

Rio Grande has requested entry of an order of this Court compelling the Trustee to abandon the bankruptcy estate's interest in the following items of personal property: (i) rental payments and other charges that accrued prior to the Petition Date but remain due and owing from Dress Barn and other tenants of the Real Property ("Rents Receivable"); and (ii) funds in the amount of approximately $13,000.00 deposited by the Debtor with the City on August 25, 1992.

For the reasons set forth below, the request of Rio Grande will be granted in part.

### Discussion

█ Rio Grande has argued that New West activated its security interest in rents that was granted under the Assignment of Rents by filing its motion entitled "Demand in Lieu of Seizure or Commencement of an Action Pursuant to 11 U.S.C. § 546(b)" five days after Debtor filed its bankruptcy petition. Whether Rio Grande's interest in the right to receive the rents supersedes the Chapter 7 Trustee's interest in the right to receive rents necessarily involves a consideration of the parties' interests in the property. Generally, state law determines the extent of a party's interest in property. *In re South Pointe Assocs.*, 161 B.R. 224, 226 (Bankr. E.D.Mo.1993) (citing *Butner v. United States*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979)). In Missouri,[3] an assignment of rents agreement alone does not effect an absolute conveyance of rents to the assignee; the assignee must take some other action before the assignee activates any right to receive the rents.

█ Missouri law requires an assignee to satisfy four criteria before it may collect rents under an assignment of rents clause:
1. Proper documentation of the assignments;
2. Proper recording of the assignment in the form required for an interest in real estate;
3. Default on the part of the assignor/debtor; and
4. Possession of the premises by the assignee, or action equivalent to possession by the assignee. *South Pointe*, 161 B.R. at 226; *In re Northwest Commons, Inc.*, 136 B.R. 215, 218 (Bankr.E.D.Mo.1991).

█ No dispute exists regarding the compliance with the first three requirements. As to the last requirement, the Court finds and concludes that New West did not take

---

2. *Scissors v. Dress Barn, Inc.*, 989 F.2d 505 (Table, Text in WESTLAW), Unpublished Disposition, 1993 WL 53169 (8th Cir. March 3, 1993) (Nos. 92–2226, 92–2376).

3. Missouri is a "lien theory" state, as contrasted with those states that recognize an automatic

transfer of an absolute assignment of rents upon the occurrence of a specific condition. *South Pointe*, 161 B.R. at 226, n. 1 (citing *In re Village Properties, Ltd.*, 723 F.2d 441, 443 (5th Cir. 1984)).

possession of the premises prior to the commencement of this bankruptcy case. Therefore, absent some prepetition action equivalent to possession, New West had no ownership or perfected lien interest in prepetition rents under the Assignment of Rents Agreement.

■ Pursuant to 11 U.S.C. Section 541, postpetition rents are property of the Chapter 11 estate. For purposes of this consideration, New West held no ownership or perfected lien interest in postpetition rents until and unless some equivalent action was taken. In the circumstances presented here, the filing of the Demand in Lieu of Foreclosure Pursuant to Section 546(b), within five days after commencement of this case is, under applicable nonbankruptcy law, an action equivalent to possession that authorized Rio Grande to collect and retain rents that became due on and after the date of such notice. *See In re Centre of Missouri Ltd.,* 116 B.R. 138, 141 (Bankr.E.D.Mo.1990) (filing by creditor of motion to "Prohibit or Condition Use of Cash Collateral, for Adequate Protection, and for Sequestration of Funds" three days after commencement of bankruptcy case constituted "some equivalent action"). Pursuant to Sections 546(b) and 362(b)(3), this action gives rise to an interest in favor of Rio Grande that is superior to the interest of a trustee or debtor in possession only as to rents that accrued after the filing of the 546(b) motion.

Therefore, as Assignee of New West, Rio Grande does not hold an ownership or perfected security interest in collected or uncollected prepetition rents. Similarly, based on the Assignment of Rents Agreement, Rio Grande does not hold an ownership or perfected security interest in rents that accrued between the commencement of the case and the date on which the Section 546(b) notice was given.

Absent some separate basis upon which a claim may be grounded, the TIF funds are not subject to an ownership interest or perfected security interest running to Rio Grande. Apparently recognizing this conclusion, Rio Grande has asked the Court to look to the postpetition Cash Collateral Order as the basis for its interest in these funds.

### *Effect of the Cash Collateral Order*

■ Rio Grande has argued that it has a valid and perfected security interest in all rents of the Debtor pursuant to the Cash Collateral Order. The Cash Collateral Order designated the "[r]ents, cash on hand and the funds in the Debtor's bank accounts" as cash collateral. *See* Cash Collateral Order ¶ 9, p. 4 and ¶ 15, p. 5. The Order granted New West replacement security interests and liens, retroactive to the Petition Date, in and upon all property of the Debtor and of the Estate. *See* Cash Collateral Order, *supra* p. 3. The Cash Collateral Order further provided as follows:

> The liens and security interests granted hereunder shall extend to all of Debtor's property, whether owned or existing on the Petition Date, or acquired or arising subsequent thereto, and shall not be limited or affected by the expiration or termination of Debtor's authorization to use Cash Collateral under this Stipulated Order.

Cash Collateral Order, ¶ (N)(1), p. 18.

The plain language of the provisions of the Cash Collateral Order indicates that, to the extent of the Debtor's use of cash collateral, the interests of Rio Grande were protected by a lien upon the Debtor's property, including postpetition rents and cash in the Debtor's bank accounts. The right to collect rents, whether accrued or subsequently due, became property of the estate upon the filing of the bankruptcy petition. As a result of the Cash Collateral Order, Rio Grande acquired a perfected security interest in the estate's interest in the right to collect the rents. Thus, by virtue of the Cash Collateral Order, and only to the extent of the Debtor's use of Rio Grande's cash collateral, Rio Grande is entitled to foreclose upon postpetition rents and upon the Debtor's right to collect accrued but uncollected prepetition rents, and upon cash in bank accounts that might include previously collected rents.

By the same reasoning, and only to the extent of the Debtor's use of Rio Grande's cash collateral, Rio Grande is entitled to the TIF funds that became property of the estate. The language of the Cash Collateral

Order grants to Rio Grande liens that are superior to any interest of the Trustee on property of the Debtor and of the Estate, including "personal property" and "accounts." These terms, by any reasonable interpretation, encompass money deposited for redevelopment purposes and labeled a "tax increment allocation redevelopment fund." These redevelopment funds were prepetition assets of the Debtor that had been deposited on account with the City. As such, the Debtor's interest in the funds became property of the estate upon filing of the bankruptcy petition and, as a result, became subject to the Cash Collateral Order and the interests of Rio Grande.

It must be emphasized that the Rio Grande interests in the TIF funds, and in the prepetition rents, and in the rents that accrued after commencement of the case but before the Section 546(b) notice was filed, are limited to the security interests created by the Cash Collateral Order, which in turn protect the Rio Grande interest in the Debtor's use of the Rio Grande cash collateral. Therefore, in this proceeding, Rio Grande has no claim to these assets if the Debtor's use of the Rio Grande cash collateral has been satisfied from other sources.

**IT IS ORDERED** that this matter is concluded; and that the "Motion To Confirm Or, In The Alternative, To Compel Abandonment" filed on behalf of Rio Grande Properties II, L.P. is sustained in part and denied in part; and

That, to the extent of the Debtor's use of the Rio Grande cash collateral, the estate interest in the Debtor's property including rents and the TIF funds is subject to the postpetition lien interest of Rio Grande; and

That as a result of the notice filed pursuant to 11 U.S.C. Section 546(b) on November 2, 1992, the rents that accrued on and after such date are the property of Rio Grande, and any bankruptcy estate interest or claim that may exist therein is abandoned; and

That to the extent that, after the Debtor's use of cash collateral has been satisfied, value remains in rents that accrued prior to November 2, 1992, and in the TIF funds, and in any other property of the estate, said value is not subject to any other claim of Rio Grande; and that as to such property, the motion to compel abandonment is denied; and

That all other requests for relief are denied.