**In re KOULA ENTERPRISES, LTD., Debtor.**

**Bankruptcy No. 095–71231–511.**

United States Bankruptcy Court, E.D. New York.

May 30, 1996.

Dollinger, Gonski, Grossman, Permut & Hirschhorn by Matthew Dollinger, Carle Place, New York, for Serf Realty Co. and Simco Management Co.

Certilman Balin Adler & Hyman by Edward A. Christensen, East Meadow, New York, for Debtor.

## OPINION

### (Motion for Relief from Stay)

MELANIE L. CYGANOWSKI,
Bankruptcy Judge:

Before the Court is a motion by Serf Realty Co. and Simco Management Co. (collectively, "Serf") for relief from the automatic stay imposed by 11 U.S.C. § 362 to permit them to exercise all rights and remedies with respect to property owned by the debtor, Koula Enterprises, Ltd. ("Koula" or "Debtor"), located at 1999–2015 Merrick Rd., Merrick, New York (the "Property").[1] The Debtor filed its voluntary petition for relief under Chapter 11 on May 8, 1995.[2] Its petition discloses that the Debtor is in the business of "ownership, management and rental of real property." The sole asset listed on the schedules is the Property, valued at $2,200,000 on Schedule A. The Schedules list three mortgagees with claims aggregating $2,060,200, tax creditors with priority claims in "unknown" amounts, and two unsecured creditors collectively owed less than $5,000.

At the hearing, both parties suggested that the Court hear oral argument on a purely legal question which would dispose of the motion if decided in Serf's favor. In the event that the Court ruled in the Debtor's favor, then both sides conceded that an evidentiary hearing would be required. Therefore, the Court heard argument and at the conclusion of the hearing, reserved decision to consider the legal issue raised by the parties and the decision of the Court of Appeals for the Third Circuit in *In re Jason Realty, L.P.*, 59 F.3d 423 (3d Cir.1995).[3] Because the Court recognizes that if it adopts the argument proffered by Serf, single-asset Debtors in this Court will be significantly affected, it has carefully reviewed the relevant case law.

### Factual Background

On July 8, 1986, Koula executed a promissory note in the principal amount of $1,500,-000 in favor of Columbia Federal Savings Bank ("Columbia"), secured by a first mortgage on the Property.[4] A rider to the mortgage states as follows:

AS FURTHER security for the payment of all indebtedness herein mentioned, all rents and profits of the premises and the right, title and interest of the MORTGAGOR in and under all leases now or hereafter affecting the premises, are hereby assigned and transferred to the MORTGAGEE. So long as no default shall exist in compliance with any requirement hereof or of any further instrument at any time executed with respect to this mortgage, MORTGAGOR may collect assigned rents and profits as the same fall due, but upon the occurrence of any such default, or at such later time as the MORTGAGEE in its sole discretion may fix by written notice, all right of the MORTGAGOR to collect or receive rents or profits shall wholly terminate. All rents or profits which the MORTGAGOR shall be permitted to collect hereunder shall be received by him in

---

1. Serf's notice of motion refers to the Property's address as 1999–2015 Merrick Road. However, many of the mortgage documents annexed to its motion refer to property located at 1623 Merrick Road. In its opposition, the Debtor states that "Serf/Simco was the purchaser of certain consolidated mortgages (collectively the "Mortgage") encumbering real property owned by the Debtor known as 1623 Merrick Road...." Neither party has provided the Court with any explanation for the discrepancy, but as both parties seem to concede that Serf holds the first mortgage on the Debtor's sole asset, the Court will assume that the discrepancy is of no moment. The Court also notes that the tax descriptions of 1999–2015 Merrick Rd. and 1623 Merrick Rd. are both "Section 55, Block 524, Lot 14."

2. The Court has jurisdiction over the subject matter and the parties to this core proceeding pursuant to 28 U.S.C. §§ 1334 and 157(a) and (b)(2)(G). Venue is proper. 28 U.S.C. § 1408.

3. The Debtor moved for authority to enter into a lease of non-residential real property, which Serf opposed. That motion was adjourned without date, pending disposition of the present motion for relief from stay. Although the Debtor also sought an extension of time within which it must file a disclosure statement and plan of reorganization, its plan and disclosure statement have since been filed. Accordingly, that motion is marked off as moot.

4. The July 8, 1986 note and mortgage was actually a consolidation of several prior mortgages given to Serf's predecessors in interest.

trust to pay the usual and reasonable operation expenses, and the taxes upon, the premises and the sums owing the MORTGAGEE as they become due and payable as provided in this mortgage or in the note, or in any instrument modifying this mortgage. The balance of such rents and profits after payment of such operation expenses, taxes and sums due the MORTGAGEE, and after the setting aside of accruals to date, of such expenses, taxes and sums, including amortization, shall be the MORTGAGOR's absolute property. Any assignment of the rents, income or profits or any part thereof, without the MORTGAGEE's prior written consent, shall be null and void.

The parties also entered into an Extension and Consolidation Agreement on that same date. Koula thereafter defaulted in its payments, and in July, 1992, the parties executed a further agreement ("Agreement") which recited that Koula (1) was in arrears for some $134,000; (2) was unable to obtain additional financing; and (3) could not provide sufficient cash flow to service the indebtedness, but that the parties wished "to come to an accommodation in order to avoid litigation." The Agreement provided a mechanism for Koula to cure the arrears.

At some point thereafter, Koula again defaulted, and Columbia commenced a foreclosure action in the Supreme Court of the State of New York, Nassau County. On February 22, 1994, prior to the bankruptcy filing, the Hon. Bernard F. McCaffrey entered an Order appointing John J. Lynch, Esq. as Receiver. The note and mortgage were then assigned to Berkeley Federal Savings Bank, and then to Serf, which now moves for relief under Section 362(d).[5]

## DISCUSSION

First, Serf points to the decision of the Court of Appeals for the Third Circuit in *In re Jason Realty, L.P.*, 59 F.3d 423 (3d Cir.1995), and contends that while the decision is not binding authority in this district, this Court should adopt its reasoning. The facts in *Jason Realty* may be summarized as follows: the debtor executed a promissory note in favor of a bank, secured by a mortgage and an assignment of leases, which was contained in a separate document. The assignment provided in part as follows:

> THAT the Assignor for good and valuable consideration, receipt whereof is hereby acknowledged, hereby grants, transfers and assigns to the Assignee the entire lessor's interest in and to those certain leases ... TOGETHER with all rents, income and profits arising from said leases.... So long as there shall exist no default by the Assignor in the payment of the principal sum, interest and indebtedness secured hereby and by said Note and Mortgage, ... the Assignor shall have the privilege to collect ... all rents, income and profits arising under said leases or from the premises described therein and to retain, use and enjoy the same.

The *Jason Realty* debtor defaulted, and the bank sent notices to the tenants of the property demanding that they pay rent directly to the bank. The bank also commenced a foreclosure action and applied for the appointment of a receiver. A week later, the debtor filed a Chapter 11 petition. The debtor then moved in the bankruptcy court for authority to use cash collateral, which was granted, conditioned on payment of a monthly sum to the bank as adequate protection. The district court reversed, and held that the rents were not property of the estate which the debtor could use. The debtor appealed to the Third Circuit, arguing that the estate held an interest in the rents because the assignment merely pledged the

---

**5.** Section 362(d) provides:

(d) On request of a party in interest and after *notice and a hearing, the court shall grant relief* from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or

(2) with respect to a stay of an act against property under subsection (a) of this section, if—

(A) the debtor does not have an equity in such property; and

(B) such property is not necessary to an effective reorganization.

rents as security but did not transfer title to the rents. The bank asserted that the debtor had no interest in the rents on the date of the filing, because it had assigned the rents years earlier. The issue before the Third Circuit was therefore whether the assignment conveyed title to rents to the bank or instead merely pledged the rents as security.

■ The Third Circuit stated, and this Court takes no issue with the rule, that an assignment is absolute if its language demonstrates an intent to transfer immediately the assignor's title to the rents. The Third Circuit reviewed the assignment of leases, and concluded that the language

> was quintessentially absolute, because it was a total assignment in *per verba de praesenti:* Jason Realty "hereby grants, transfers and assigns to the assignee the entire lessor's interest in and to those certain leases . . . Together with all rents." These parties mutually agreed in words of the present to transfer full title to the rents.

*Jason Realty,* 59 F.3d at 427.

The Third Circuit concluded that the assignment, on the day it was executed, vested the bank with title to the rents and granted the debtor a license to collect the rents which expired upon the debtor's default. Accordingly, the Third Circuit held that the rents were not property of the estate and were not available either as cash collateral or as a funding source for the debtor's chapter 11 plan.

Serf urged this Court, at oral argument, to "compare, word for word, the language contained in these mortgage instruments and the language quoted by the Circuit Court in *Jason Realty* decision, and you will find a virtual verbatim of words relating to this assignment." Tr. at 10. The Court has taken Serf's suggestion. In doing so, however, it finds several meaningful differences. To begin, the Court agrees that the clause in the instant case also contains words of present transfer, *i.e.,* "all rents and profits of the premises . . . are hereby assigned and transferred to the MORTGAGEE." Similarly, the clause in this case and that in *Jason Realty* both provide that as long as the mortgagor is not in default, it may collect assigned rents,

which right terminates upon default. The clause in this case also allows the Debtor to use the rents it collects to pay the operating expenses of and taxes upon the property (the debtor's use of rents in *Jason Realty* was unrestricted).

The similarities end here, however, and the Court believes it significant that the clause in the present case, unlike the clause before the Third Circuit, continues with the following words:

> The balance of such rents . . . after payment of such operation expenses, taxes and sums due the MORTGAGEE, and after the setting aside of accruals to date, of such expenses, taxes and sums, including amortization, shall be the MORTGAGOR's absolute property.

The Court believes that this language is inconsistent with any notion that the parties intended to absolutely assign title to the rents to Serf upon execution of the assignment. To the contrary, it clearly provides that the rents continue to be the Debtor's property. Further, the assignment states that "assignment of the rents . . . without the MORTGAGEE's prior written consent, shall be null and void." This language implies the converse: that the Debtor could assign the rents if it had Serf's prior written consent. It therefore cuts against Serf's argument that it took title to the rents upon execution of the assignment. Why would the parties provide that the Debtor could assign what it did not own?

The Court notes that the *Jason Realty* Court rejected its debtor's argument that several characteristics of the assignment suggested that it was meant only as collateral, *see Jason Realty* at 428, and stated that

> we are impressed that the instant assignment was contained in an agreement separate from the mortgage. [The bank] proceeded here as an assignee of rents under rights conferred on a special instrument bearing the title "Assignment of Lease or Leases," . . . and not in its capacity as a mortgagee enforcing rights contained in the instrument bearing the title "mortgage."

*Id.* at 428. That is not the case here as the assignment clause upon which Serf relies is found in the mortgage instrument.

In sum, the Court holds that the effect of the assignment clause here, which is not contained in a separate instrument and which varies significantly from the assignment in *Jason Realty*, is not controlled by the principles there enunciated.

More troublesome, however, is Serf's alternative contention that the enforcement of a perfected assignment of rents by the appointment of a receiver absolutely and unconditionally transfers title to the rents to the secured creditor such that they never become property of the bankruptcy estate. Serf also cites *Jason Realty* in support of its position, but for the reasons set forth above, the Court believes that the decision is inapposite where the assignment does not transfer title to the mortgagee upon its execution. Because the Third Circuit held that the assignment transferred title to the rents upon its execution, it never addressed the issue of whether the appointment of a receiver transfers title to rents where the assignment is one for security.

Serf concedes that as long as a receiver has not been appointed, the Debtor has the right to collect and use the rents if there is adequate protection of the creditor's interest. However, Serf points to Judge McCaffrey's Order and contends that its "plain words ... combined with the affirmative actions taken by SERF and SIMCO effectively and permanently deprived the Debtor of any right to collect rents and thus this Court cannot authorize their use by the Debtor." Serf's Mem. at 18.

The cases are split, and provide no clear guidance. Some hold that where a mortgagee has invoked its rights pre-petition under an assignment of rents clause, the debtor's rights are thereby extinguished. *See, e.g., In re Woodmere Investors Ltd. Partnership,* 178 B.R. 346 (Bankr.S.D.N.Y.1995) (applying Michigan law); *In re South Pointe Assoc.,* 161 B.R. 224 (Bankr.E.D.Mo.1993) (applying Missouri law); *In re Northwest Commons, Inc.,* 136 B.R. 215 (Bankr.E.D.Mo.1991) (applying Missouri law); and *In re Mount Pleasant Ltd. Partnership,* 144 B.R. 727 (Bankr.W.D.Mich.1992) (applying Michigan law). Others hold, on various theories, that the debtor nonetheless retains an interest in the rents sufficient to denominate them as "property of the estate" upon the filing of a bankruptcy petition. *See, e.g., In re Newberry Square, Inc.,* 175 B.R. 910 (Bankr. E.D.Mich.1994) (applying Michigan law); *In re 5028 Wisconsin Ave. Assoc.,* 167 B.R. 699 (Bankr.D.D.C.1994) (applying District of Columbia law); *In re Atrium Dev. Co.,* 159 B.R. 464 (Bankr.E.D.Va.1993) (applying Virginia law); *In re Willows of Coventry, Ltd. Partnership,* 154 B.R. 959 (Bankr.N.D.Ind.1993) (applying Indiana law); *In re Mews Assoc.,* 144 B.R. 867 (Bankr.W.D.Mo.1992) (applying Missouri law); *In re Grant Assoc.,* 1991 WL 21228 (S.D.N.Y. Feb. 5, 1991) (applying Georgia law); and *In re Constable Plaza Assoc.,* 125 B.R. 98 (Bankr.S.D.N.Y.1991) (applying New York law).

Serf's argument boils down to the proposition that under New York law, the appointment of a receiver in a mortgage foreclosure action transfers title of the rents to the bank. However, the Court does not believe that New York law permits such a conclusion.

Section 541 of the Bankruptcy Code defines the bankruptcy estate as including "all legal or equitable interests of the debtor in property as of the commencement of the case" wherever they are located and by whomever they are held. Those interests are defined by reference to state law. *Butner v. U.S.,* 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). Although the question of whether the debtor's interest in property is part of the bankruptcy estate is governed by federal law, the nature and extent of the debtor's interest in property is determined by applicable nonbankruptcy law. *In re Prudential Lines Inc.,* 928 F.2d 565 (2d Cir. 1991).

A receiver is a creature of state law. *See* N.Y.Civ.Prac.L. & R., § 6401 (McKinney 1980); N.Y. Real Prop. Acts § 1325 (McKinney 1979). A receiver is not the agent of the mortgagee, *see Schwartzberg v. Whalen,* 96 A.D.2d 974, 466 N.Y.S.2d 846 (App.Div.1983); rather, a receiver is an officer of the court which appoints him and

takes possession of property in *custodia legis*. *Wembach Corp. v. Emigrant Indus. Sav. Bank*, 264 A.D. 161, 34 N.Y.S.2d 688 (App. Div.), *aff'd*, 289 N.Y. 662, 45 N.E.2d 169 (1942); *Jamaica Sav. Bank v. Florizal Realty Corp.*, 95 Misc.2d 654, 407 N.Y.S.2d 1016 (Sup.Ct.1978). In New York, the appointment of a receiver in a foreclosure action does not change title to the property. Rather, the effect of a receiver's appointment has been articulated as follows:

> By his appointment the receiver did not take any title to the rents, but merely was the agent of the court to collect them and hold them subject to the order of the court. Until a receiver was appointed, the mortgagor had the right to receive the rents, and could not be compelled to account for them. By the appointment of the receiver, the plaintiff obtained an equitable lien upon the unpaid rents and upon them only. During the receivership the legal title of the land and its incidents lay in the mortgagor until the sale of the land under public auction under the judgment of foreclosure, and the conveyance thereunder. The Court of Appeals has said as to this ...: "A receiver pendente lite is a person appointed to take charge of the fund or property to which the receivership extends while the case remains undecided. The title to the property is not changed by the appointment. The receiver acquires no title, but only the right of possession as the officer of the court. The title remains in those in whom it was vested when the appointment was made. The object of the appointment is to secure the property pending the litigation, so that it may be appropriate in accordance with the rights of the parties, as they may be determined by the judgment in the action."

*Greenwich Sav. Bank v. Samotas*, 17 N.Y.S.2d 772, 774 (N.Y.Mun.Ct.1940) (citations omitted).

Similarly, where a temporary receiver is appointed for a corporation, New York courts have held that the receiver does not acquire title to the property of the corporation, but only acquires the right of possession as court officer. *Daro Indus. v. RAS Enterprises*, 56 A.D.2d 776, 392 N.Y.S.2d 446 (App.Div.1977), *aff'd*, 44 N.Y.2d 969, 380 N.E.2d 160, 408 N.Y.S.2d 329 (1978).

Thus, the effect of the appointment of the receiver in the present case was to terminate the Debtor's right to possession of the rents, not to terminate its ownership prior to a judgment of foreclosure and subsequent sale.

In addition to the nature of a receivership under state law, other factors point the Court to its conclusion. Section 543 of the Code requires a custodian, with knowledge of the case, to

> deliver to the trustee any property of the debtor held or transferred to such custodian, or proceeds, product, offspring, rents or profits of such property, that is in such custodian's possession, custody or control on the date that such custodian acquires knowledge of the commencement of the case ...

A state court-appointed receiver is a "custodian" subject to Section 543. 11 U.S.C. § 101(11); *In re Lizeric Realty Corp.*, 188 B.R. 499 (Bankr.S.D.N.Y.1995). Yet if the Court were to accept Serf's argument that the appointment of a receiver terminates the Debtor's ownership of the property, Section 543 would serve no purpose, as the receiver would never hold any property of the debtor. In addition, the United States Supreme Court has explicitly recognized that Section 543, in conjunction with Section 541, "bring[s] into the estate property in which the debtor did not have a possessory interest at the time the bankruptcy proceedings commenced." *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 205, n. 10, 103 S.Ct. 2309, 2313–14, n. 10, 76 L.Ed.2d 515 (1983).

To illustrate its argument that the only right retained by the Debtor after a receiver is appointed is to see that rents are applied to reduce the indebtedness, Serf contends that if a mortgagor defaults and an appointed receiver collects rents, but the mortgagor thereafter redeems the property, the rents collected by the receiver during the default but before the redemption would be the mortgagee's property. Although Serf concedes that "the rents accruing after redemption would be the debtor's property because there no longer is any indebtedness for them to secure," Serf argues that the debtor's

interest is in future rents, not present rents. It urges that

> [O]nce default occurs a role-reversal of sorts takes place. The mortgagor now has an "inchoate" right to future rents, based on the uncertain possibility that the property will be redeemed and the default will be cured, much like the mortgagee had an "inchoate" interest in rents prior to default. The interest which the mortgagor has does not entitle him to payment of current rents even if he realizes on his inchoate right of redemption.

Serf's Mem. at 32.

 But just as the Bankruptcy Code recognizes the "inchoate" property interest of secured creditors who have not enforced their rights pre-petition, *see e.g. In re Northport Marina Assoc.*, 136 B.R. 911, 919 (Bankr.E.D.N.Y.1992) ("the rents continue to be the property of the debtor, but the mortgagee is not without rights, which the debtor must recognize"), it also recognizes the "inchoate" property interest of Debtors, to which Serf alludes. In *In re Constable Plaza Assoc.*, 125 B.R. 98 (Bankr.S.D.N.Y.1991), Judge Schwartzberg stated that "the prepetition appointment of a state court receiver did not cut off all of the debtor's property interests in the future rents ... the debtor continues to possess a residual interest in the rents which results in characterizing such rents as property of the estate...." *Constable*, 125 B.R. at 106. *Constable*'s rationale is, in part, that the debtor retains an interest in the rents because if the mortgage is ever satisfied, the right to collect rents will revest in the debtor.

Serf argues that the *Constable* court, and the courts which lay claim to a similar holding, inappropriately rely upon *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983). Serf contends that *Constable* interpreted *Whiting Pools* too broadly. The Court believes, however, that *Whiting Pools* is every bit as broad as Judge Schwartzberg's interpretation, and its rationale applies to the present case. As the Court stated in *In re Willows of Coventry, Ltd. Partnership*, 154 B.R. 959, 965–966 (Bankr.N.D.Ind.1993):

The Court's comments and conclusions in *Whiting Pools* are equally applicable to the case at hand. Although this court is confronted with turnover from a custodian, pursuant to section 543, rather than section 542, the two cases are functionally identical. The only distinction is that rather than taking possession of the secured property directly, [the bank] did so through a state court receiver. Nonetheless, the rights it obtained are no different from the rights the secured creditor in *Whiting Pools* possessed as a result of its seizure of the property there in question. As a matter of [state] law, the appointment of a receiver did not terminate the debtor's ownership of the [property]; the appointment was only a provisional remedy which brought the property into the custody of the state court pending its final disposition. Since that disposition had not taken place prior to the petition, the property in question is property of the bankruptcy estate....

For all of the foregoing reasons, the Court holds that the pre-petition appointment of a receiver did not extinguish the Debtor's interest. The rents are therefore property of the estate pursuant to 11 U.S.C. § 541. The present motion, and the Debtor's motion for authority to enter into a lease, are restored to the calendar. The parties are directed to appear on June 12, 1996 at 2:30 p.m. and advise the Court of the manner in which they wish to proceed. In the event a further evidentiary hearing is required, the Court will schedule it at that time.

Debtor's counsel is directed to settle an Order on shortened notice.