*574 OPINION OF THE COURT
John M. Curran, J.
This matter came before the court upon a motion by plaintiff Corinne Rice for an order requiring defendant Clean Air Technologies International, Inc. (hereinafter CATI) to deliver to her two patents held by CATI. Specifically, plaintiff Corinne Rice seeks an order compelling CATI to produce the original U.S. letters patents for the two patents owned or held by CATI, all documents of registration and confirmation for the two patents, and all documents representing or relating to each of the patents.
Upon due consideration, the court grants the motion for an order requiring CATI to deliver to counsel for Mrs. Rice the original U.S. letters patents for the two patents owned or held by CATI, along with all documents of registration and confirmation of the two patents of which defendants have possession, upon condition that no interest in the patents shall be sold, transferred, used as collateral or otherwise disposed of by Mrs. Rice absent further order of the court.
Background and Procedural History
Mrs. Rice is the holder of a term loan note executed by CATI in August 2001 in the amount of $30,000 (Cantwell affidavit, exhibit A). Due to a default in payment of that note, in September 2007 Mrs. Rice obtained a judgment against CATI in the amount of $40,841.11 (see Cantwell affidavit, exhibit B).
Mrs. Rice also has a security interest in certain property owned by CATI under a general security agreement executed by CATI on August 21, 2001 (see Cantwell affidavit, exhibit C [hereinafter security agreement]). The security agreement provides in part:
“Debtor hereby grants to Secured Party a security interest (Security Interest) in and to all property of the following types, wherever located and whether now/owned or hereafter owned or acquired by Debtor, . . . including WITHOUT LIMITATION, all property described in any schedule from [ti]me to time delivered by Debtor to Secured Party: Equipment; Fixtures; Inventory; Accounts; Chattel Paper; Documents; Instruments; Investment Property and General Intangibles (Collateral).” (Security agreement 1i 1 [emphasis added].)
According to plaintiffs, an event of default has occurred under the security agreement, and Mrs. Rice therefore contends that *575 she is entitled by the terms of the security agreement to take possession of the collateral. She specifically seeks delivery of documents evidencing any patents owned or held by CATI (see Cantwell affidavit, exhibit E). Paragraph 10 (c) of the security agreement provides:
“Secured Party’s rights and remedies with respect to the Collateral shall be those of a Secured Party under the Uniform Commercial Code and under any other applicable law, as the same may from time to time be in effect, in addition to those rights granted herein .... Upon the existence or occurrence of an event of default, Secured Party may require Debtor to assemble the collateral and make it available to Secured Party . . . and Secured Party may use and operate the Collateral.”
CATI owns an interest in two patents* for equipment that tests vehicular emissions (see Cantwell affidavit, exhibit D [Miller examination before trial (EBT)], at 65-66). Mrs. Rice demanded delivery of the patents in December 2007 (see Cant-well affidavit, exhibit E), but they have not been delivered.
Law
Plaintiff alleges that the patents are among the assets in which she has a security interest under the security agreement, as “Documents; Instruments . . . [and] General Intangibles” (security agreement U 1).
David Miller, CATI’s officer, asserts in an affidavit that it was never CATI’s intention to include its patents as collateral under the security agreement (see Miller affidavit 1i 5). According to Miller, at the time of entry into the security agreement, plaintiffs knew that CATI had filed for two patents with the United States Patent Office and that those patents were crucial to CATI’s business and represented a valuable asset; but despite this knowledge, plaintiffs did not specifically include the term “patents” in the definition of collateral in the security agreement, which plaintiffs drafted (Miller affidavit K 4). In addition, defendants allege that, under the Uniform Commercial Code, the security agreement is excessively vague and is therefore unenforceable with respect to the patents (see UCC 9-108). Further, defendants assert that a prerequisite to the inclusion of *576 the patents as collateral is that they be “described in any schedule from [ti]me to time delivered by Debtor to Secured Party” (see security agreement IT 1), and defendants’ patents were never so described in any schedule (see Miller affidavit 11 5; defendants’ mem of law at 3-4; Cantwell affidavit, exhibit C [blank schedule]).
 The security agreement specifically provides that all of its terms, unless otherwise defined therein, “shall have the definitions set forth in the [New York] UCC . . . , as the same may from time to time be in effect” (security agreement 1111 [o]). Article 9 of the UCC in New York was substantially revised, effective July 1, 2001, prior to the execution of the security agreement in August 2001. That the term “general intangibles” under article 9 included patents was clear under the former version of the UCC in New York (see Grappo v Alitalia Linee Aeree Italiane, S.p.A., 56 F3d 427, 431 [2d Cir 1995], citing UCC former 9-106; UCC former 1-206, Comment; Architectronics, Inc. v Control Sys., Inc., 935 F Supp 425, 432 [SD NY 1996]).
Currently, New York’s UCC article 9 defines “general intangible” as: “any personal property, including things in action, other than accounts, chattel paper, commercial tort claims, deposit accounts, documents, goods, instruments, investment property, letter-of-credit rights, letters of credit, money, and oil, gas, or other minerals before extraction. The term includes payment intangibles and software.” (UCC 9-102 [a] [42] [emphasis added].) According to Comment 5 (d) to current UCC 9-102:
“ ‘General intangible’ is the residual category of personal property, including things in action, that is not included in the other defined types of collateral. Examples are various categories of intellectual property and the right to payment of a loan of funds that is not evidenced by chattel paper or an instrument. As used in the definition of ‘general intangible,’ ‘things in action’ includes rights that arise under a license of intellectual property, including the right to exploit the intellectual property without liability for infringement. The definition has been revised to exclude commercial tort claims, deposit accounts, and letter-of-credit rights.” (Emphasis supplied.)
Black’s Law Dictionary also defines “intellectual property” as “[a] category of intangible rights protecting commercially valuable products of the human intellect .... comprising] primarily trademark, copyright, and patent rights” (Black’s Law Dictionary 824 [8th ed 2004]). In the court’s view, the drafters of *577 revised article 9 did not intend to alter the historical treatment of patents as “general intangibles” under that article, and commentators appear to agree (see Smith, General Intangible or Commercial Tort: Moral Rights and State-Based Intellectual Property as Collateral Under U.C.C. Revised Article 9, 22 Emory Bankr Dev J 95, 103 [fall 2005], citing UCC 9-102, Comment 5 [d]; Singer, Security Interests in Patents, 21 Am Bankr Inst J 20 [Apr. 2002]). Thus, the court determines that under the revised UCC article 9 as well as under the prior version, the term “general intangibles” includes “patents.”
Further, contrary to defendants’ contention, the security agreement reasonably identifies the patents as collateral by including the term “general intangibles.” Under UCC 9-108 (a), “a description of personal. . . property is sufficient, whether or not it is specific, if it reasonably identifies what is described.” “[C]ollateral is reasonably identified as long as the ‘identity of the collateral is objectively determinable’ ... [in other words,] if a third party could determine what items of the debtor’s collateral are subject to the creditor’s security interest” (In re Southern Ill. Railcar Co., 301 BR 305 [SD Ill 2002] [applying New York law and quoting UCC 9-108 (b) (6)]).
The court also rejects defendants’ argument that the patents had to have been listed on a schedule to serve as collateral under the agreement. Whether a contract is ambiguous or, on the contrary, clear and unequivocal in its terms, is a question of law to be decided by the court in the first instance (see Matter of Wallace v 600 Partners Co., 86 NY2d 543, 548 [1995]). “The objective in any question of the interpretation of a written contract ... is to determine ‘what is the intention of the parties as derived from the language employed’ ” (Hartford Acc. & Indem. Co. v Wesolowski, 33 NY2d 169, 171-172 [1973] [citations omitted]). “[W]hen parties set down their agreement in a clear, complete document, their writing should as a rule be enforced according to its terms,” without resort to extrinsic evidence (W.W.W. Assoc. v Giancontieri, 77 NY2d 157, 162 [1990]; see Reiss v Financial Performance Corp., 97 NY2d 195, 198 [2001]).
Applying those principles, the court determines that the security agreement does not require that specific property have been “described in any schedule . . . delivered by Debtor to Secured Party” in order to be treated as collateral under the agreement. As plaintiffs note, the definition of collateral in the security agreement creates a “security interest” in “all prop *578 erty of the following types . . . including WITHOUT LIMITATION, all property described in any schedule” (see security agreement 1i 1). That language unambiguously includes property not scheduled but otherwise falling within the categories of property listed, i.e., general intangibles; and the term general intangibles, by clear precedent, includes patents.
Pursuant to paragraph 10 (e) of the security agreement, CATI agreed to pay on demand all costs and expenses incurred by plaintiffs in enforcing the agreement, including actual attorney fees. Further, plaintiffs assert that they have issued no “notice or application to the Court of an intent to sell the patents at this time” (reply mem at 3).
Therefore, based upon the above, the court grants the motion for an order requiring CATI to deliver to counsel for Mrs. Rice the original U.S. letters patents for the two patents owned and held by CATI, along with all documents of registration and confirmation of the two patents of which defendants have possession, upon condition that no interest in the patents shall be sold, transferred, used as collateral or otherwise disposed of by Mrs. Rice absent further order of the court.
Plaintiff to submit an order and any application for fees and expenses incurred on the motion upon notice to defendants.

 According to the testimony of defendant Miller, one patent was applied for in 1999 and granted in 2001, and the other patent was applied for in 2000 and granted in 2002 (see Miller EBT at 65).